# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

Assigned on Briefs October 30, 2001

### STATE OF TENNESSEE v. DANNY DAVIDSON

**Direct Appeal from the Circuit Court for Weakley County**
**No. CR80-2000     William B. Acree, Jr., Judge**

_____

**No. W2001-00118-CCA-R3-CD  - Filed February 26, 2002**

_____

Defendant was convicted of attempted manufacture of methamphetamine.  On appeal, defendant submits that the evidence was insufficient to support the conviction, and the trial court erred in not charging the jury on facilitation.  We conclude the evidence was sufficient to uphold the conviction, and defendant was not entitled to an instruction on facilitation.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID G. HAYES and JAMES CURWOOD WITT, JR., JJ., joined.

C. Michael Robbins, Memphis, Tennessee (on appeal); Joseph P. Atnip, District Public Defender (at trial and on appeal); and Kevin David McAlpin, Assistant District Public Defender (at trial and on appeal), for the appellant, Danny L. Davidson.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; and Thomas A. Thomas, District Attorney General, for the appellee, State of Tennessee.

## OPINION

On September 5, 2000, the Weakley County Grand Jury returned a true bill of indictment against defendant, Danny L. Davidson, charging him with one count of manufacturing a Schedule II controlled substance, one count of possession of a Schedule II controlled substance, and one count of contributing to the delinquency of a minor.  Count One was amended to attempted manufacture of methamphetamine, and Count Two was dismissed on the motion of the prosecution.  The case was tried by a jury in the Circuit Court for Weakley County on November 6, 2000.  The jury returned a verdict of guilty of attempt to manufacture a Schedule II controlled substance and contributing to the delinquency of a minor.  On December 1, 2000, defendant was sentenced to concurrent terms of six years and eleven months, twenty-nine days for these offenses.  A timely motion for a new trial was filed by defendant on December 15, 2000.  The motion was denied by the trial court on January 8, 2001.  Timely notice of appeal was filed by defendant on January 9, 2001, and notice of this appeal timely followed.

## Facts

Tom Erwin, a lieutenant with the Martin Police Department, testified that the Department had received a complaint concerning the home of Danny Davidson. According to the complaint there was a "strong chemical odor" coming from defendant's home. The date of the complaint was on or about August 6, 2000. Lieutenant Erwin testified that, based on his training and experience, he recognized the odor as that from a possible methamphetamine lab. He investigated the odor as a result of the complaint. Lieutenant Erwin later obtained a search warrant that he executed on defendant's home at about eight o'clock the following morning.

Lieutenant Erwin testified that he was trained by the DEA at a week long course in Memphis concerning "clandestine laboratories." Lieutenant Erwin testified that he executed the search warrant at defendant's residence with other members of the Drug Task Force. He testified that upon arrival at the residence, the officers announced their presence and knocked at the door, at which time no one answered. The officers eventually gained entrance into the residence by kicking the door in. Upon entering the residence, Lieutenant Erwin observed glassware with a powder residue in it, "sludge waste material" in the drain of the sink, denatured alcohol, Epsom salts, and "starting fluid cans." Lieutenant Erwin testified that all of these items were used "in the process" of producing methamphetamine. He stated that they also found spoons, bowls, and hypodermic needles which are used to inject the finished product. The officers also found defendant inside the residence. He testified that in the trash outside the house he found two empty boxes of pseudoephedrine, Epsom salts, and a little vial which contained a white powder substance that tested positive for methamphetamine.

Lieutenant Erwin testified that in his past experience he has observed six to eight labs and that he is familiar with the process of manufacturing methamphetamine. He explained that the pseudoephedrine pills are put in a jar and soaked in denatured alcohol. This process extracts the amphetamine from the pills. Lieutenant Erwin testified that a DEA lab later determined that the white substance found at the residence was not methamphetamine.

Captain David Moore of the Martin Police Department testified that he interviewed defendant at the scene of the search of the house. He testified that he asked defendant if defendant had produced a lot of methamphetamine in the house within the past twenty-four hours, and defendant responded, "Not much." Captain Moore testified that he did not question defendant until after he advised defendant of his rights.

Jay Barnes, a special agent with the Tennessee Bureau of Investigation assigned to the Drug Investigative Division in West Tennessee, testified that he has attended the DEA's clandestine laboratory investigative school in Quantico, Virginia, as well as other non-described "methamphetamine awareness classes," and has personally observed twenty or more methamphetamine labs. He testified that at the scene of the search he observed several containers and an apparatus he knew to be consistent with the manufacturing of methamphetamine.

Upon interviewing defendant, Agent Barnes learned that defendant was assisting a juvenile, Michael Gregory, who was making the methamphetamine. Agent Barnes testified that defendant stated he was only assisting Gregory. Defendant told Agent Barnes "that Mr. Gregory provided the precursor materials," and that they had taken the materials and cooked them out on some railroad tracks close to the house. Agent Barnes testified that defendant described the materials they were using as "pseudoephedrine from Sudafed tablets, lithium strips from lithium batteries, and acetone, which is a solvent." Agent Barnes testified that the acetone was a replacement for anhydrous ammonia, which meant that the final product would only be a powder called pseudoephedrine. Agent Barnes testified that this product was similar to caffeine and nothing like methamphetamine. Agent Barnes testified that he did not interview Michael Gregory. Lastly, Agent Barnes testified that defendant gave a statement, and that he, Agent Barnes, later wrote down a summary of the statement indicating that defendant only assisted Michael Gregory in the manufacture and that Michael Gregory had provided the materials needed to manufacture the methamphetamine.

Harold Moore testified that he saw defendant between 7:00 and 8:40 p.m. on the evening of August 5, 2000, at Moore's home. He testified that the two of them watched television together. He further testified that about 8:40 p.m. Michael Gregory came to the door, and defendant left with Gregory.

Defendant Danny Davidson testified in his own behalf. He testified that there was material at his house, which appeared to be methamphetamine. He also testified that items found in the search involved in the methamphetamine production process were brought there by Michael Gregory. He testified that when he left Harold Moore's house, he returned home. A few minutes later, Michael Gregory came in with a bag containing the jar, which was later seized in the search, as well as some batteries. Defendant testified that Gregory told defendant that Gregory would give him some of what defendant believed to be methamphetamine. Gregory later gave defendant a quarter-gram of methamphetamine.

Defendant testified that he liked methamphetamine and that he was addicted to it. Defendant said that all of the materials used in the process were brought by Gregory and that none of them belonged to defendant. He testified that all of the preparation was done by Gregory. Defendant further testified that his only interest was in getting some of the drugs for his own use and that he did not know how to make methamphetamine. He stated that he did not get high when he used the material given to him by Gregory.

Agent Barnes again testified in rebuttal that defendant told him that he was involved with Gregory in the process of making the substance. Barnes based this assertion on defendant's use of the pronoun "we" when defendant gave his statement to the agent.

The trial judge did not charge the jury on any lesser-included offenses; however, the trial judge did instruct the jury as to criminal responsibility for the conduct of another. The jury returned verdicts of attempted manufacture of methamphetamine and contributing to the delinquency of a minor.

On December 1, 2000, defendant was sentenced as a Range II offender to a term of six years for Count One and to a term of eleven months, twenty-nine days for Count Three. The sentences were ordered to be served concurrently. The trial court enhanced the sentence due to defendant's history of criminal convictions and conduct in addition to that necessary to establish the range.

The trial court denied alternative sentencing for defendant and found that less restrictive measures than confinement had been applied to defendant in the past without success. The trial court also found that defendant had a lengthy criminal history justifying confinement, and a sentence to confinement would provide an effective deterrence. In his brief, defendant points out that the pre-sentence report, received as Exhibit I at the sentencing hearing, indicates that defendant successfully completed his two previous placements on an alternative sentence. Defendant also points out that the report indicates that defendant was convicted of two misdemeanor offenses of possession of marijuana and one DUI.

## Analysis

*I.    Sufficiency of the Evidence*

When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding of the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). In determining the sufficiency of the evidence, this Court does not re-weigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 99 Tenn. 298, 286 S.W.2d 856, 859 (Tenn. 1956). This Court is required to afford the state the strongest legitimate view of the evidence contained in the record, as well as all reasonable and legitimate inferences that may be drawn from the evidence. State v. Herrod, 754 S.W.2d 627, 632 (Tenn. Crim. App. 1988).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this Court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the state and resolves all conflicts in favor of the theory of the state. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden on appeal of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record and the inferences that may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. Matthews, 805 S.W.2d 776, 780 (Tenn. Crim. App. 1990).

-4-

The jury convicted defendant of attempted manufacture of methamphetamine. Tennessee Code Annotated section 39-12-101 (1997) defines criminal attempt in the following manner:

> (a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:
>
> * * *
>
> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part.

In the instant case, we find that sufficient evidence existed to uphold a conviction for attempted manufacture of methamphetamine. The testimony reveals that Lieutenant Erwin received a complaint of a "strong chemical odor" from defendant's home on August 6, 2000. Upon executing a search pursuant to a valid search warrant, Lieutenant Erwin found evidence of materials typically used in the production of methamphetamine, including glassware with a powder residue in it, "sludge waste material" in the sink, denatured alcohol, Epsom salt, and starting fluid cans containing ether. Outside the residence, Lieutenant Erwin found two empty boxes of pseudoephedrine and Epsom salt, along with a vile containing a white powder that tested positive at the site for methamphetamine. The substance was later determined not to be methamphetamine.

The evidence adduced at trial shows that Captain Moore asked defendant if defendant "had produced a lot of methamphetamine inside [defendant's] house within the last twenty-four hours," and defendant said "not much." The record shows that Agent Barnes viewed items consistent with methamphetamine production at defendant's house and that defendant told Agent Barnes that defendant was "only assisting a juvenile, Michael Gregory," in the production of methamphetamine. Defendant also told Agent Barnes that "[defendant and Gregory] did this," "[defendant and Gregory] cooked it on the railroad tracks," and "[defendant and Gregory] powdered [the methamphetamine] out at [defendant's] house." The evidence adduced also showed that defendant liked methamphetamine and was addicted to it.

The evidence in this case consists of all the makings of methamphetamine found in defendant's home and defendant's admission of assisting the juvenile Gregory for the purpose of using the finished product of methamphetamine. A reasonable jury could conclude that defendant was guilty of attempt to manufacture methamphetamine. We affirm.

II.     *Lesser-Included Offense of Facilitation.*

Defendant contends that because the evidence was insufficient to uphold a conviction for attempted manufacture of methamphetamine, he was entitled to a jury charge on the lesser included offense of facilitation of a felony. We disagree.

In Tennessee, a person is "criminally responsible" for another's offense - in this case, attempted manufacture of methamphetamine - if "acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds of result of the offense, the person

solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2).

> However, the offense of criminal facilitation involves the following:
>> A person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under Tenn. Code Ann. § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the offense.

Tenn. Code Ann. § 39-11-403(a). The statute applies to those facilitating "criminal conduct of another by knowingly furnishing substantial assistance to the perpetrator of a felony, but who lacks the intent to promote or assist in or benefit from, the felony's commission." Tenn. Code Ann. § 39-11-403. (Sentencing Commission Comments).

> In Tennessee, an offense is a lesser-included offense if:
>> (a) all of its statutory elements are included within the statutory elements of the offense charged; or
>> (b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
>>> (1) a different mental state indicating a lesser kind of culpability; and/or
>>> (2) a less serious harm or risk of harm to the same person, property or public interest; or
>> (c) it consists of
>>> (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
>>> (2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
>>> (3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

State v. Burns, 6 S.w.3d 453, 469 (Tenn. 1999). After determining if an offense is a lesser-included offense, the trial court must determine if the jury should be instructed as to the offense. Burns gives a two-step process. First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense. In making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence. Second, the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser- included offense. Id. at 469.

In State v. Love, No. W1999-01957-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 633, at *23-24 (Tenn. Crim. App., at Jackson, filed Aug. 17, 2001), this Court analyzed the appropriate circumstances under which facilitation of a felony must be charged to a jury. In that case, the

state pursued a theory of criminal responsibility for felony murder, and the trial court did not instruct on facilitation of felony murder. Initially, the court stated that "virtually every time one is charged with a felony by way of criminal responsibility for the conduct of another, facilitation of the felony would be a lesser-included offense." Id. at *23 (quoting State v. Lewis, 919 S.W.2d 62, 67 (Tenn. Crim. App. 1995)). However, the court in Love further stated that Lewis dictates an instruction on facilitation only if the facts could cause a reasonable jury to conclude that the defendant "lacked the intent to promote or assist in, or *benefit from*, the [underlying] felony's commission." Id. at *24 (emphasis added).

Defendant's undoing in the instant case is his testimony that, although he did not know how to make methamphetamine, he allowed Gregory to make some because defendant "liked it" and was addicted to it. In his brief, defendant directly states that he was "intent only on obtaining some of the drug for his personal use." We conclude that defendant was clearly intent on benefitting from Gregory's production of the methamphetamine. There is no evidence showing defendant lacked the intent to benefit from the commission of the underlying felony. As such, and in keeping with our previous holdings, we conclude that a charge on facilitation was not warranted. We affirm.

## CONCLUSION

Accordingly, we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE

-7-