STATE of Tennessee, Appellee,

v.

**Larry Herbert HERROD, and Andrea Jones, Appellants.**

Court of Criminal Appeals of Tennessee, at Jackson.

Jan. 20, 1988.

Permission To Appeal Denied by Supreme Court re: Herrod on July 25, 1988.

Permission to Appeal Denied by Supreme Court re: Jones on April 4, 1988.

W. Mark Ward, Asst. Public Defender, Memphis, for appellant Larry Herbert Herrod.

Edwin C. Lenow, Memphis, for appellant Andrea Jones.

W.J. Michael Cody, Atty. Gen. & Reporter, Janice Bossing, Asst. Atty. Gen., Nashville, Hugh W. Stanton, Jr., Dist. Atty. Gen., James C. Beasley, Jr., Asst. Dist. Atty. Gen., Memphis, for appellee.

## OPINION

JONES, Judge.

The defendants, Larry Herbert Herrod, and Andrea Jones, were convicted of the offenses of aggravated kidnapping, aggravated rape, and assault to murder first degree accompanied by bodily injury by a jury of their peers. The defendant Herrod was also found to be an habitual criminal.

The defendant Herrod was sentenced to life imprisonment in the Department of Correction in each case. He was sentenced as an habitual criminal for the offenses of aggravated rape and assault to murder first degree accompanied by bodily injury. The trial court ordered these two sentences to be served consecutively. The trial court sentenced Herrod to life imprisonment for aggravated kidnapping as a Range II persistent offender and for the commission of an especially aggravated offense.

The defendant Jones was sentenced as follows: (a) a sentence of twenty-five (25) years in the Department of Correction for assault to murder first degree accompanied by bodily injury; (b) a sentence of thirty-five (35) years in the Department of Correction for the offense of aggravated kidnap-

ping; and (c) a sentence of thirty-five (35) years in the Department of Correction for the offense of aggravated rape. The trial court ordered the sentences for assault to murder first degree and aggravated rape to be served consecutively.

After the trial court denied their respective motions for a new trial the defendants appealed as of right to this Court pursuant to Rule 3(b), Tenn.R.App.P.

In this Court both defendants contend that the evidence contained in the record is insufficient to support their respective convictions. In addition, the defendant Herrod contends the trial court committed error of prejudicial dimensions when it: (a) denied him his federal and constitutional right to self-representation, (b) overruled his objection to the attorney general's improper questioning, and (c) sentenced him.

## THE RIGHT TO SELF–REPRESENTATION

Prior to trial the defendant Herrod advised counsel that he wanted to represent himself at the trial of this cause. Counsel advised the trial court of Herrod's request.

When the trial court conducted a hearing regarding Herrod's request to proceed *pro se,* Herrod advised the trial court he had a personality conflict with appointed counsel. Since he could not afford to hire an attorney, he had decided to represent himself rather than have appointed counsel represent him.

The only inquiry made by the trial court concerned Herrod's qualifications to represent himself. The trial court's inquiry included questions addressing Herrod's "schooling in law," and his knowledge of the law concerning the right to a fair trial, a speedy trial, right to proper discovery and investigation, the filing of motions, and voir dire examination. At the conclusion of the hearing the trial court said: "The court rules that the defendant does not even have the basic knowledge of how a jury trial is conducted or anything about his rights.... Application to represent yourself is denied."

Following the trial court's ruling counsel advised the trial court Herrod had a right to represent himself. The trial court responded by saying: "He [Herrod] has a right if he is *qualified,* but he doesn't have a right to prejudice his own rights." [Emphasis added.] When counsel stated he didn't think Herrod had to have a law degree to represent himself, the trial court responded by saying: "Well, I understand that. But they have to have enough knowledge to properly represent themselves and see that they got [sic] a fair trial, and he doesn't have the knowledge to even—don't even know how to get the trial started."

In *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the United States Supreme Court ruled that an accused in a criminal prosecution has a constitutional right to represent himself—proceed *pro se* without the assistance of counsel. In ruling the Court said:

> The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant—not an organ of the State interposed between an unwilling defendant and his right to defend himself personally. To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment. In such a case, counsel is not an assistant, but a master; and the right to make a defense is stripped of the personal character upon which the Amendment insists.... An unwanted counsel 'represents' the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not *his* defense. 422 U.S. at 820–821, 95 S.Ct. at 2533–2534, 45 L.Ed.2d 573–574.

■ There are three (3) essential prerequisites which must be present before the right to self-representation becomes absolute. First, the accused must assert the right to self-representation timely. See *Chapman v. United States,* 553 F.2d 886

(5th Cir.1977); *United States v. Lawrence,* 605 F.2d 1321 (4th Cir.1979). Second, the accused's request must be clear and unequivocal. *Pryor v. State,* 632 S.W.2d 570 (Tenn.Crim.App.1982); *Goode v. Wainwright,* 704 F.2d 593, 599 (11th Cir.1983). Third, the accused must knowingly and intelligently waive the right to the assistance of counsel. *Faretta v. California,* supra; *State v. Northington,* 667 S.W.2d 57 (Tenn. 1984). In the case *sub judice* no one questioned the timeliness of Herrod's assertion of his right to self-representation. Nor did anyone question whether his request was clear and unequivocal. Thus, the only issue which the trial court needed to address was whether Herrod was knowingly and intelligently waiving his right to the assistance of counsel. *Faretta v. California,* supra. See *United States v. Price,* 474 F.2d 1223, 1227 (9th Cir.1973).

■ The accused's lack of expertise or professional capabilities is not a factor to be considered by the trial court when an accused invokes his constitutional right to self-representation. *Faretta v. California,* supra; *Johnstone v. Kelly,* 808 F.2d 214 (2nd Cir.1986), cert. denied — U.S. —, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987). See *United States v. Price,* supra. In *Faretta* the Court said: "A defendant need not himself have the skill and experience of a lawyer in order [to] competently and intelligently ... choose self-representation." 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 581–582. In other words, the accused's "technical legal knowledge" is irrelevant to the inquiry of whether an accused should be permitted to exercise his right to self-representation, *Faretta v. California,* 422 U.S. at 836, 95 S.Ct. at 2541, 45 L.Ed.2d at 582; and, a court may not deny an accused the right to self-representation because the accused does not possess "the basic knowledge of how a jury trial is conducted" or a knowledge of "his rights." *Faretta v. California,* supra; *Johnstone v. Kelly,* supra. See *United States v. Price,* supra.

■ We are of the opinion the trial court committed error of prejudicial dimensions in failing to (a) explain the perils of self-representation to Herrod and (b) determine whether Herrod's waiver of the right to the assistance of counsel was knowingly and intelligently made. *Faretta v. California,* supra; *United States v. Chaney,* 662 F.2d 1148, 1152 (5th Cir.1981); *Martin v. Wyrick,* 433 F.Supp. 921, 929 (W.D.Mo. 1977). See *State v. Northington,* supra; *United States v. Lorick,* 753 F.2d 1295, 1299 (4th Cir.1985); *Johnstone v. Kelly,* supra; *United States v. McDowell,* 814 F.2d 245 (6th Cir.1987). Furthermore, Herrod's Sixth Amendment right to self-representation was violated when the trial court denied his request on the ground he did not possess sufficient knowledge to represent himself. *Faretta v. California,* supra; *Johnstone v. Kelly,* supra.

■ Herrod is entitled to a reversal of his convictions. See *Faretta v. California,* supra; *Johnstone v. Kelly,* supra. The accused is not required to establish prejudice when his right to self-representation has been wrongfully denied. *Bittaker v. Enomoto,* 587 F.2d 400, 402 (9th Cir.1978), cert. denied 441 U.S. 913, 99 S.Ct. 2013, 60 L.Ed.2d 386 (1979); *Dorman v. Wainwright,* 798 F.2d 1358, 1370 (11th Cir.1986); *Johnstone v. Kelly,* supra. See *McKaskle v. Wiggins,* 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 950 n. 8, 79 L.Ed.2d 122 (1984).

■ We recognize that the ruling of the distinguished trial judge was motivated by his sincere concern for Herrod's welfare; and we certainly don't fault or criticize him because of his concern and interest in protecting Herrod's rights. We also recognize that *pro se* representation is usually inadequate and often unconducive to the orderly administration of a criminal trial. However, these concerns must yield to the constitutional right of an accused to self-representation.

When a trial judge is faced with a request for self-representation, we recommend the trial judge utilize the litany of questions, or ask similar questions to those, found in 1 *Bench Book for United States District Judges* 1.02–2 21.02–5 (3rd ed. 1986). The recommended questions can be found in *United States v. McDowell,* supra at 251–252 as an appendix to the opinion.

In view of our disposition of this issue we will not address the remaining issues Herrod has presented to this Court for review.

## SUFFICIENCY OF THE EVIDENCE

During the early morning hours of June 16, 1986, the victim was kidnapped at gunpoint by the defendants after leaving a bus station in downtown Memphis. She was subsequently taken to an apartment occupied by the defendant Herrod in South Memphis.

While held captive at the apartment, Herrod forced the victim to disrobe and enter the bedroom at gunpoint. The defendant Jones raped the victim by penetrating her vagina. Herrod then raped her by penetrating her anus. He refused to penetrate her vagina because she was in her menstrual cycle. The defendant Jones subsequently forced the victim to perform fellatio on him, and, thereafter, raped her again by penetrating her vagina.

Subsequently, the victim was permitted to dress. She was ordered at gunpoint to lie on a sheet located on the kitchen floor. A sock was placed across her mouth and tied in the back. Before her hands could be tied with a second sock, the victim grabbed a pistol, which was placed on the floor in front of her, and exited the apartment through the back door. She was apparently caught by Herrod, returned to the kitchen, and placed upon the sheet. Thereafter a gun, was placed at the base of her head and fired.

Officers of the Memphis Police Department were in the apartment complex investigating a shooting call. Apparently the complainant indicated to the police that Herrod had fired shots at the victim following her escape, and he subsequently saw Herrod standing over the victim. When the police went to Herrod's apartment to investigate, they began knocking on the door. The victim, realizing an opportunity to again escape, exited the apartment through the kitchen door. She eventually came in contact with a police officer who heard her screaming and went to investigate.

Herrod fled as officers approached the apartment to investigate the victim's complaint. He went to the apartment of a friend, admitted that he had shot a woman, and requested that the friend take him to Humboldt, Tennessee. On one occasion Herrod stated he shot the woman as they struggled for control of a pistol. Later he stated he shot the woman two or three times as he attempted to take her jewelry and money. Initially he implicated Jones, but later told friends that Jones was not involved in the shooting. Herrod was arrested the next day after Jones' relatives informed police where he could be found.

When police entered the apartment, Jones was in the bedroom pretending he was asleep. Two spent cartridges were found on the bed, and a loaded .22 caliber pistol was found under the bed. The cartridges in the gun matched the spent cartridges. After Jones was arrested and transported to jail the arresting officer found a loaded .22 caliber pistol and $35.00 in food stamps in the back seat of his patrol car.

Officers recovered the victim's purse, her shorts, and other personal effects from the apartment. Her sister's "organizer", which had been removed from the car being driven by the victim, was also found inside the apartment. The victim's shoes were found at the rear of the apartment along with the car.

The victim made a positive identification of both Herrod and Jones. Herrod's fingerprints were found on the window located on the driver's side of the vehicle; and his fingerprints were also found on a bus ticket envelope which belonged to the victim.

The victim was subjected to extremely cruel and brutal treatment during her captivity. The victim was stabbed with a pair of scissors in her left lower neck. The scissors were still embedded in her neck when she arrived at the hospital. She sustained a gunshot wound to the back of her head, causing a fracture to a bone in the occipital portion of her head. She was beaten brutally in the areas of her head

and neck resulting in the loss of four teeth, the fracture of the bone above the teeth, a deep laceration to her lip, injury to one of her ears, and multiple abrasions to her head and neck. Her face was severely swollen as a result of the trauma to the head and neck. An examination of her rectum revealed two large tears, which had been and were bleeding when she was examined. It was estimated that she had sustained the tears in her rectum within six to twelve hours before the examination.

Both of the defendants denied that they kidnapped, raped, or inflicted bodily harm to the victim.

Herrod contended the victim wanted to buy narcotics, and he explained to her that narcotics could be found in the general area where he lived. The victim accompanied Jones and himself to his apartment. Subsequently, she voluntarily engaged in sexual intercourse with him.

Herrod subsequently left to purchase marijuana, and remained away from the apartment for approximately forty minutes. When he returned to the apartment, Jones was in bed and the victim had left the apartment. Herrod insinuated that Jones was the person who inflicted the injuries to the victim.

Herrod was on parole when the offense occurred. He fled the apartment as the police approached because he was afraid they would arrest him for the possession of marijuana. He expressed the opinion that the victim implicated him because she believed he purposely left her with Jones knowing something was going to happen to her.

Jones relates a different version than Herrod. According to Jones, Herrod called him and requested that they meet at the bus station so Herrod could return a jogging suit to Jones. When Jones arrived, he heard a horn blow, saw Herrod on the passenger side of a vehicle, and a woman driving the vehicle. They subsequently went to Herrod's apartment. Herrod met an individual by the name of Dave, outside of his apartment and the four of them entered into the house. When Herrod went to the bedroom with the victim, Jones left the apartment, went to the vehicle, and drank beer as he listened to the radio. When he returned to the apartment after consuming the beer, the individual by the name of Dave was laughing, and he returned to the vehicle. Later, he felt dizzy from drinking the beer, went to the bedroom, and laid on the bed. He then heard the door slam and gunfire. When he went to investigate, Herrod told him the victim was drunk, and had fired a shot over her head. The victim had blood on her blouse.

Herrod testified that no one entered the apartment besides the victim, Jones and himself.

When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at trial is sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn.R.App.P. 13(e).

In determining the sufficiency of the evidence we do not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978); *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn.1978); *State v. Grace*, 493 S.W.2d 474, 476 (Tenn.1973); *Braziel v. State*, 529 S.W.2d 501, 505 (Tenn.Crim.App.1975). To the contrary, we are required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Cabbage*, supra.

Questions concerning the credibility of witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court. *State v. Cabbage*, supra; *State v. Grace*, supra; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982). In *Grace* our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d at 476.

■ We are of the opinion there is sufficient evidence contained in the record from

which a rational trier of fact can conclude that the defendant, Andrea Jones, is guilty of the offenses of aggravated kidnapping, aggravated rape, and assault to commit murder in the first degree accompanied by bodily injury. Tenn.R.App.P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Tuggle*, supra. The elements of these offenses as well as the identity of the defendant, Andrea Jones, as the person who committed these offenses are clearly established in the record beyond a reasonable doubt.

The judgment of the trial court as to the defendant Andrea Jones is affirmed.

The judgment of the trial court as to the defendant Larry Herbert Herrod is reversed, and this cause is remanded to the trial court for a new trial in all cases.

DAUGHTREY and BIRCH, JJ., concur.