IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs January 7, 2003

## STATE OF TENNESSEE v. HENRY DANIELS

**Direct Appeal from the Criminal Court for Shelby County**
**Nos. 00-05606, 07     Joseph B. Dailey, Judge**

**No. W2002-00193-CCA-R3-CD  - Filed June 6, 2003**

The defendant was convicted by a Shelby County Criminal Court jury of aggravated burglary, a Class C felony, and aggravated rape, a Class A felony. He was sentenced by the trial court as a career offender to fifteen years for the aggravated burglary conviction and as a violent offender to forty years for the aggravated rape conviction, with the sentences to be served consecutively, for an effective sentence of fifty-five years in the Department of Correction. On appeal, he raises the sole issue of whether the trial court committed reversible error by denying his request to represent himself at trial. Following our review, we affirm the judgments of the trial court but remand for entry of a corrected judgment as to the aggravated burglary conviction to reflect the defendant's conviction offense which was omitted from the judgment form.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed and Remanded for Entry of a Corrected Judgment**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOE G. RILEY and JOHN EVERETT WILLIAMS, JJ., joined.

A C Wharton, Jr., Shelby County Public Defender; Garland Ergüden, Assistant Public Defender (on appeal); and Mary Katherine Kent, Assistant Public Defender (at trial), for the appellant, Henry Daniels.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Jennifer S. Nichols and Katrina U. Earley, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On May 23, 2000, the Shelby County Grand Jury returned two indictments against the defendant, Henry Daniels, charging him with aggravated burglary and aggravated rape based on a

June 6, 1999, incident that occurred at a Memphis home shared by the rape victim, Marzetta Earnest, her two young children, and her terminally ill, bedridden father. On November 5, 2001, the day the defendant's trial was scheduled to begin, the defendant announced to the trial court that he was dissatisfied with the representation provided by his court-appointed public defender and wished to either represent himself or be given time to retain different counsel. The trial court refused his request, stating that the defendant had ample opportunity in the interval since his June 1999 arrest to retain another attorney if he wished and that his request to represent himself had not been timely made. Thereafter, the trial court excused the jury panel based on a report of contact having occurred between some witnesses and venire members, and ordered that a new panel be brought in for trial the next morning.

The defendant's trial, at which he was represented by the public defender, began the following day, on November 6, 2001, and concluded on November 8, 2001, with the jury finding him guilty of both offenses. The State's proof included the following: the victim's testimony that the defendant, whom she knew as the older brother of her child's father, accosted her at knifepoint in the hallway of her home at approximately 3:00 a.m. on June 6, 1999, threatened to kill her, held the knife to her throat, raped her in an empty bedroom of the home, and then telephoned her after his departure but before the arrival of the police to threaten her again; evidence that the kitchen window in the victim's home had been broken out and a wooden box pushed against the wall underneath the window on the outside of the house; the defendant's birth certificate, personal phone books, and a bill addressed to the defendant's girlfriend found on the floor of the bedroom in which the rape occurred after the defendant's departure from the home; evidence that the victim's caller identification box had recorded a telephone call from the residence of the defendant's girlfriend, where police officers subsequently located and arrested the defendant that same morning; and DNA evidence that the defendant's sperm cells were present on a vaginal swab taken from the victim the day of the rape. The defendant's proof consisted of his testimony that he and the victim, who had been having an affair, had engaged in consensual intercourse on the morning of June 6, 1999. He said the victim had become angry, throwing an object at him and breaking the kitchen window, when he told her he loved her and expressed his desire to publicize the affair to his girlfriend and to the victim's boyfriend. The defendant also claimed that his statement to police, in which he denied having had any sexual contact with the victim or having been at her home on June 6, 1999, was fabricated by the police officer who took the statement.

## ANALYSIS

The defendant contends the trial court committed reversible error by denying him his constitutional right to self-representation, arguing that his request to proceed *pro se*, made before the impaneling of the jury, was timely. The State responds by arguing that the trial court correctly found that the defendant's request was untimely in light of the circumstances, in which the defendant's request was not made until the eve of trial after nearly two years had elapsed since his indictment.

The United States and Tennessee Constitutions grant criminal defendants the right to the assistance of counsel, or alternatively, to represent themselves. See U.S. Const. amend. VI; Tenn.

Const. art. I, § 9; see also State v. Small, 988 S.W.2d 671, 673 (Tenn. 1999). However, three requirements must be met before a trial court will allow a defendant to proceed *pro se*. State v. Herrod, 754 S.W.2d 627, 629 (Tenn. Crim. App. 1988). First, the defendant must make a timely assertion of the right of self-representation. Id. Second, the defendant's request to proceed *pro se* must be clear and unequivocal. Id. at 630. Finally, the defendant must knowingly and intelligently waive the right to the assistance of counsel. Id.

Our review of the record leads us to conclude that the defendant not only failed to assert his right to self-representation in a timely manner, but also failed to clearly and unequivocally express that his request was to proceed *pro se*, rather than to have a different counsel of his choosing retained or appointed to represent him. When the defendant announced he wished to represent himself, the trial court questioned him as follows:

> THE COURT: Mr. Daniels, stand up, sir. When did you come to this conclusion that you wanted to represent yourself?
>
> MR. DANIELS: Today, Your Honor.
>
> THE COURT: In all these many cases that you have been convicted of in the past, did you ever represent yourself in any of those?
>
> MR. DANIELS: No, sir.
>
> THE COURT: How far did you go in school?
>
> MR. DANIELS: I graduated.
>
> THE COURT: From law school?
>
> MR. DANIELS: No, sir.
>
> THE COURT: From college?
>
> MR. DANIELS: High school. Hamilton High.
>
> THE COURT: Hamilton High School but not from college and not from law school.
>
> MR. DANIELS: (No audible response.)
>
> THE COURT: All right. Well, I'm not going to allow you to represent yourself because this is trial date on a case that's been pending for a couple of years. Actually, the time of the alleged

offense is in June of '99. You've been in custody since June of '99. The matter was indicted in May of 2000. It's now November of 2001, trial date after many, many reset[t]ings. And just today you announced that you want to represent yourself.

The charges are extremely serious charges – an A Felony and a C Felony – and you obviously would not have time to adequately prepare to represent yourself. It's something that requires a tremendous amount of preparation. And while the constitution does allow individuals, under certain circumstances, to represent themselves, this is not one of those circumstances because it's been brought to my attention way too late.

The trial court informed the defendant that numerous motions and hearings had already been heard in the case, the trial had been reset several times, and that everyone was ready for trial. The court stated that it was not going to allow another continuance, that it would be impossible for the defendant to adequately prepare for trial, and that the trial would therefore start the next morning with defense counsel representing the defendant. The defendant protested, complaining to the trial court about defense counsel's representation and reminding the court that he had filed a motion to have counsel removed from his case.

The defendant asserts in his brief that the trial court, in denying his request to proceed *pro se*, made the erroneous supposition that his real agenda was to hire a new lawyer and delay matters by a lengthy continuance. The defendant's statements in the lengthy colloquy that followed the trial court's initial ruling, however, supports just such an inference:

MR. DANIELS: I understand what you're saying, sir. But you're saying that I've got to let her be my attorney. That's what you're saying.

THE COURT: That's what I'm saying.

MR. DANIELS: I don't have no other choice.

THE COURT: No, sir.

MR. DANIELS: I ain't got no choice, myself, to try to get me another attorney or whatever I want to do? She's got to be my attorney. She's got to be the one to go to trial with. That's exactly what you're saying?

THE COURT: That's what I'm saying. Because – and I'll state for the record, so that in the event you're convicted the record is clear:

The law allows you to hire your own attorney if you and your family can and want to. And this case has been pending in here – Your first date in here was June the 13th of the year 2000 – almost a year and a half ago. And it's been reset many times since then for a variety of different reasons – motions, hearings, this is the third trial setting we've had. And so you could have certainly hired a lawyer to represent you if you'd been able to, or the law even allows for you to represent yourself but not to come in on trial date, and a case that's two and a half years old and say, "Okay, I want to represent myself," because I don't think you will have had time to fully and properly prepare your case for trial and present it to the jury – to come in here today and say, "Well, I've decided today that I want to represent myself."

So you're [sic] only – Your situation now is, "Yes, [defense counsel] will be your lawyer.

MR. DANIELS: There's nothing else I can do about it?

THE COURT: No, sir.

. . . .

MR. DANIELS: And I don't have nothing to say about that. I got no time to hire me a lawyer or nothing. She don't adequately represent me. I already have put motions against her, and I don't want her to be my attorney because she's confusing me.

THE COURT: I understand. No, no time to hire a lawyer because you've had time to hire a lawyer. . . . You can't come in here, on trial date, and say, "I want to reset everything. I want everybody to put everything on hold for eight months while I go hire a lawyer and get him in here and we try it eight months from now." That's not going to happen.

MR. DANIELS: I ain't said that, Your Honor.

THE COURT: That's what – that's the practical effect, though, of my granting your request to have time to hire a lawyer. That's what would have to happen. And that's not going to happen.

. . . .

[Defense counsel] is an outstanding lawyer. The fact that you filed a complaint against her doesn't mean that she should be relieved; doesn't mean that we have to reset everything because if that were the case, then the defendant could wait until the day before trial, file – put a complaint against the lawyer and get a resetting every time, and it would never go to trial. . . . We'd never get a case tried.

Thus, the record clearly shows that the defendant's emphasis was upon his dissatisfaction with his appointed counsel and his desire to have a different attorney appointed or retained in his case. However, the defendant's right to counsel does not include the right to appointed counsel of his choice, see State v. Carruthers, 35 S.W.3d 516, 546 (Tenn. 2000), and, as the trial court pointed out, he had ample time between his June 6, 1999, arrest and the November 5, 2001, trial date to retain another attorney if he so desired and could afford one. We do note that our federal courts have recognized that a defendant's right to self-representation is generally unqualified if made prior to the jury being empaneled; however, this assumes the absence of any attempt to delay the proceedings. See United States v. Young, 287 F.3d 1352, 1353 (11th Cir.) (summarizing several federal cases), cert. denied __ U.S. __, 123 S. Ct. 581, 154 L. Ed. 2d 447 (2002). Here, due to the defendant's equivocal request, we are unable to conclude that the *pro se* defendant was prepared to move forward with his trial scheduled the next day. Therefore, because the defendant's assertion of his right of self-representation was not unequivocally expressed, and because he waited until trial date to request that he be allowed to retain counsel of his choosing, we conclude that the trial court did not err in denying his request to dismiss his defense counsel and retain new counsel or proceed *pro se*.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court, but remand for entry of a corrected judgment as to the conviction for aggravated burglary to reflect the defendant's conviction offense which was omitted.

_____
ALAN E. GLENN, JUDGE