IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
March 12, 2002 Session

## STATE OF TENNESSEE v. WILLIAM C. BENTLEY

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2000-A-62     Seth Norman, Judge**

---

**No. M2001-01521-CCA-R3-CD - Filed June 19, 2002**

---

Defendant, William C. Bentley, was convicted by a Davidson County jury of attempted aggravated robbery. In this appeal, he challenges the sufficiency of the evidence to sustain the conviction, and argues that the trial court committed reversible error by admitting hearsay testimony. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOE G. RILEY and JOHN EVERETT WILLIAMS, JJ., joined.

Lawrence Wilson, Nashville, Tennessee, for the appellant, William C. Bentley.

Paul G. Summers, Attorney General and Reporter; Gill Robert Geldreich, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Shelli Neal, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### BACKGROUND

On July 10, 1999, Joe Jackson, Andrew Gardner, Sr., Andrew Gardner, Jr., and Jerry Clay, Mr. Gardner Sr.'s son-in-law, were talking while standing outside Mr. Gardner Sr.'s funeral home located on Buchanan Street in Nashville. During the conversation, Defendant suddenly approached Mr. Jackson, brandishing a gun. All four of the men were acquainted with Defendant, who owned a market across the street from Gardner, Sr.'s funeral home. Without warning, Defendant struck Mr. Jackson with the revolver, rendering two blows to the left side of his face. Mr. Jackson's ear and nose began to bleed. Mr. Jackson testified that Defendant then reached into his left pants pocket, and grabbed approximately sixty dollars. In the process of doing so, Defendant ripped Mr. Jackson's pants pocket. Defendant then approached Mr. Jackson's car and rummaged through the passenger

compartment. He then kicked the car, denting the left fender, and left. Mr. Jackson testified that as a result of the attack, he suffered a ruptured ear drum and is unable to hear out of his left ear. He further stated that prior to the attack, he and Defendant never had any conflict.

Mr. Gardner, Sr., Mr. Clay, and Mr. Gardner, Jr. corroborated most of Mr. Jackson's account of the attack. Mr. Gardner, Sr. testified that after Defendant hit Mr. Jackson, he intervened and stated to Defendant, "[d]o not hit Mr. Jackson anymore." He then witnessed Defendant grab Mr. Jackson's pants pocket, but he did not see him take anything out of the pocket. Mr. Gardner, Sr. testified that he was a friend of both Defendant and Mr. Jackson. Mr. Gardner, Jr. testified that he witnessed Defendant approach Mr. Jackson with a pistol in his hand, demanding that Mr. Jackson pay him money that was owed. However, when he turned away, he heard a loud sound, like someone was hit. When he looked up, Mr. Jackson was bleeding. He then watched as Defendant approached Mr. Jackson's car, tore off the antenna and dented the front fender. He also witnessed Defendant grab Mr. Jackson's pants pocket, but he did not see him take anything. On July 15, 1999, Mr. Jackson swore out a warrant against Defendant for armed robbery. Detective James Arendahl, who transcribed the complaint, stated that the victim admitted that he had previously spent $118.00 on supplies for a plumbing repair at one of Defendant's homes. However, he was unable to complete the project.

Defendant testified that when he arrived at his store on July 10, 1999, he saw a group of four men, including Mr. Jackson, Mr. Gardner, Sr. and Mr. Gardner, Jr., standing in Mr. Gardner, Jr.'s driveway, located across the street from his store. He denied seeing Mr. Clay. Instead, he stated that John Smith was the fourth member of the group. He then parked his car and approached Mr. Jackson, who owed him money. He explained that two years earlier, he had paid Mr. Jackson $225.00 to perform plumbing work, but that the work was never completed and Mr. Jackson did not return the money. They argued and although he swung at Mr. Jackson, he missed him. Then, Mr. Gardner, Sr. stepped in and stated, "let him [Mr. Jackson] alone." Defendant then approached Mr. Jackson's car, looking for a stick or other weapon on the ground. Finding none, he looked inside the car, intending to confiscate Mr. Jackson's keys until the debt was paid. Unable to find the keys, he then walked away. He denied touching Mr. Jackson or taking any money from him. He further denied kicking Mr. Jackson's car. On cross examination Defendant admitted that he always carries a revolver in his front pocket, primarily because he has been robbed in his store several times.

Mr. Percy Jones, Defendant's employee, testified that prior to the trial, Mr. Gardner, Sr. stated that he did not see Defendant with a gun during his altercation with Mr. Jackson. Mr. Gardner, Sr., offering rebuttal testimony for the State, denied making that statement to Mr. Jones.

Following a jury trial, Defendant was acquitted of the offense of aggravated robbery, but was convicted of the lesser-included offense of attempted aggravated robbery. He received a three year suspended sentence, with three years of supervised probation, and was ordered to pay restitution.

**ANALYSIS**

Defendant argues that "the trial judge err[ed] in holding that the State had made a *prima facie* case of all of the elements of the predicate offense." Essentially, Defendant is challenging the sufficiency of the evidence to sustain the conviction of attempted aggravated burglary. We disagree.

The burden rests with Defendant to prove that the evidence is insufficient to support the verdict returned by the trier of fact. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). We must review the evidence in the light most favorable to the prosecution to determine if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Keough, 18 S.W.3d 175, 180-81 (Tenn. 2000) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). A guilty verdict in criminal actions shall be set aside on appeal only if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt. Tenn. R. App. P. 13(e).

The State, on appeal, is entitled to the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. See Keough, 18 S.W.2d at 181 (citing State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997)); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992); State v. Herrod, 754 S.W.2d 627, 632 (Tenn. Crim. App. 1988)). Questions concerning witnesses' credibility, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact; the evidence will not be reweighed or reevaluated. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659. The standard for appellate review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of both. See State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Defendant contends that the State failed to prove that he attempted a "theft," an essential component of robbery and thus attempted aggravated robbery, because a "theft does not occur until the defendant deprive[s] the owner of the property." Specifically, he claims that because Mr. Jackson owed him money, he was the rightful owner of the money allegedly stolen, not Mr. Jackson.

Aggravated robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear, and accomplished with a deadly weapon, or by display of any article used or fashioned to lead the alleged victim to reasonably believe it to be a deadly weapon. See Tenn. Code Ann. §§ 39-13-401(a), 402(a) (1997). An attempt is committed when:

[a] person . . . acting with the kind of culpability otherwise required for the offense:

(1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;

(2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

(b) Conduct does not constitute a substantial step under subdivision (a)(3) unless the person's entire course of action is corroborative of the intent to commit the offense

Tenn. Code Ann. § 39-12-101(a) (1997).

Likewise, theft occurs when "with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103 (1997). "[T]heft is an offense against the legal title or ownership of the property." State v. Ralph, 6 S.W.3d 251, 255 (Tenn. 1999). An owner, in the context of a theft case, is defined as "a person, other than the defendant, who has possession of or any interest other than a mortgage, deed of trust or security interest in property, even though that possession or interest is unlawful and without whose consent the defendant has no authority to exert control over the property[.]" Tenn. Code Ann. § 39-11-106(26) (1997).

We find that evidence was sufficient to prove that Defendant attempted to commit aggravated robbery. Clearly, the proof established Mr. Jackson's ownership and control of the money at issue. Mr. Jackson testified that Defendant took approximately sixty dollars from his pocket. The evidence, in the light most favorable to the State, clearly showed that Defendant assaulted Mr. Jackson with a weapon, and then, without Mr. Jackson's consent, took the money from his possession. Thus, because there was sufficient evidence that the offense of aggravated robbery was completed, we find that the evidence was also sufficient to sustain Defendant's conviction for attempted aggravated robbery. Defendant is not entitled to relief on this issue.

Next, Defendant argues that the trial court committed reversible error by allowing inadmissible hearsay testimony at trial. Specifically, Defendant contends that the trial court erred by allowing Joe Jackson to testify that Mr. Gardner, Sr. told Defendant to stop hitting the victim.

During the direct testimony of Mr. Jackson, the victim in this case, the following exchange occurred:

Counsel:        Now, after he hit you did he say anything else to you?

A:              No ma'am. When Andrew Gardner and his son got in it and Andrew Gardner said, "If you hit him anymore . . .

-4-

| | |
|---|---|
| Mr. Wallace, Jr.: | Objection, Your Honor, please. |
| A: | He said, "If you hit him anymore," he said, "I'll . . . |
| Mr. Wallace, Jr.: | I object to hearsay. He's saying what somebody else said. |
| Court: | It's not hearsay if the defendant is standing there, sir. |
| Mr. Wallace, Jr.: | I thought he said Mr., excuse me, I thought he said Mr. Gardner was saying this. |
| Court: | He did, but it was in the presence of the defendant. Go ahead. |
| A: | Andrew Gardner said, "If you hit him anymore," he said, "I will do something to you." He said, "The man ain't said nothing," he said, "Spoony, you go on." He said, "You come up in my yard and jump on this man for nothing." And by that time Andrew Gardner, Jr. said, "Wait a minute, Spoony, don't you hit that man no more," he said, "that man's not bothering nobody," he said, "wait a minute." |

The State concedes that the foregoing statement was hearsay. However, the State maintains that it was not reversible error to admit the statement because it was "corroborated by other non-hearsay testimony." Furthermore, the State contends that the statement is admissible under the excited utterance exception to the hearsay rule as "a statement relating to a startling event or condition made while the declarant was under the stress or excitement caused by the event or condition." See Tenn. R. Evid. 803(2). Finally, the State argues that even if the statement was admitted in error, it was harmless error because the statement does not "affirmatively appear to have affected the result of the trial."

We find that any error in admitting the hearsay testimony was harmless. The trial court admitted the statement on the ground that it was non-hearsay because it was uttered in the defendant's presence. This Court has specifically rejected this analysis. See State v. Venable, 606 S.W.2d 298, 301 (Tenn. Crim. App. 1980) (citing Laird v. State, 565 S.W.2d 38, 41 (Tenn. Crim. App. 1978)). While the trial court erred by admitting the hearsay statement on this ground, we find that because other admissible direct evidence was similar to the hearsay testimony, the error was harmless. Mr. Gardner, Sr., who was friends with defendant and the victim, testified that he witnessed Defendant strike Mr. Jackson with a weapon. Mr. Gardner, Sr. further testified that after Defendant hit Mr. Jackson, he ordered Defendant to "let him [Mr. Jackson] alone." Defendant also testified that Mr. Gardner said, "[l]et him alone. Ain't no use in you getting in no trouble." Considering this evidence and the entire record, we cannot find that the admission of the hearsay more probably than not affected the judgment or would result in prejudice to the judicial process.

See Tenn. R. App. P. 36(b).  Nor can we find that the error affirmatively affected the result of the trial on the merits.  See Tenn. R. Crim. P. 52(a).  Defendant is not entitled to relief on this issue.

## CONCLUSION

Accordingly, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE