# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs October 1, 2013

## STATE OF TENNESSEE v. ERIQUE RICHARDSON

**Appeal from the Criminal Court for Shelby County**
**No. 10-07107     John T. Fowlkes, Jr., Judge**

_____

**No. W2012-01866-CCA-R3-CD  -  Filed March 28, 2014**

_____

The Defendant, Erique Richardson, was convicted by a Shelby County Criminal Court jury of being a felon in possession of a handgun, a Class E felony. *See* T.C.A. § 39-17-1307 (2010) (amended 2013). He was sentenced as a Range II, multiple offender to three years' confinement. On appeal, the Defendant contends that (1) the evidence is insufficient to support his conviction and (2) the trial court denied his right to counsel. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Paul L. Springer (on appeal), Charles Gilcrest (advisory counsel at trial) and Erique Richardson (pro se at trial), Memphis, Tennessee, for the appellant, Erique Richardson.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Jose F. Leon and Sam Winning, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

This case relates to a firearm being found on the Defendant during a traffic stop. Memphis Police Officer Clayton Turner testified that on June 23, 2010, he stopped the Defendant's car because the dark window tint prevented his seeing inside the car, which violated the window tint law. He obtained the Defendant's driver's license and tested the window tint with the State-issued "tint card." He placed the tint card on the window, saw that the tint on the windows was darker than the tint card, and concluded that the window tint was too dark. He said he gave the Defendant's driver's license to Officer Jones, who wrote

a ticket for the tint violation and determined whether the Defendant had outstanding warrants for his arrest. He said that after he gave the driver's licence to Officer Jones, he returned to traffic enforcement, looking for other violations. He said he saw other officers removing the Defendant from his car but did not know why. He said that the Defendant was calm and understood their conversation and that he did not see anything out of the ordinary.

On cross-examination, Officer Turner testified that he did not know if Officer Jones wrote a ticket for the window tint violation. When asked how he documented that he tested a window tint, he said he usually documented on a citation that he compared the window tint to the State-issued tint card. When asked if he saw Officer Jones test the window tint, he replied that it was unnecessary for him to test it. On redirect examination, he identified the warrant for the Defendant's arrest and said the Defendant was charged with violating the window tint law and unlawfully possessing or carrying a weapon.

Memphis Police Officer Tommie Jones testified that on June 23, 2010, Officer Turner stopped the Defendant's car because of the dark tinted windows. He said Officer Turner determined that the window tint was too dark. He said he ran the Defendant's driver's license number on his PDA and learned the Defendant had a possible outstanding warrant for his arrest. He asked the Defendant to get out of the car and said the Defendant hesitated. He said he saw a weapon when the Defendant got out of the car. He said that as he frisked the Defendant, he felt the gun on the Defendant's right side. He described the gun as a .40 caliber Smith and Wesson and said that a bullet was in the chamber and that thirteen bullets were in the magazine clip. He said the Defendant was calm and asked why Officer Jones was detaining him. He told the Defendant that an outstanding warrant existed, and the Defendant said, "Okay." The Defendant told him the warrant related to a child support issue.

Officer Jones testified that the Defendant did not produce a handgun carry permit during the traffic stop. He said it was standard procedure to check the driver's license during a traffic stop. He said that Officers Manning, Turner, and Lester and possibly two additional officers participated in the traffic enforcement operation and that they checked many drivers' licenses that day. He agreed that he prepared the Defendant's arrest ticket and that he charged the Defendant with tinted windows and unlawful possession of a weapon.

On cross-examination, when asked if the Memphis Police Department policy manual authorized the police's stopping Evelyn Richardson, the Defendant's mother, Officer Jones denied knowing her. He identified the affidavit of complaint and his handwriting on the affidavit and said that he completed the affidavit on June 23, 2010, but that it was stamped by the General Sessions Clerk's Office on June 22, 2010. He did not know why the affidavit was stamped June 22 but said the traffic stop occurred on June 23.

Officer Jones testified that the traffic stop was legal. He denied testifying before the grand jury. He said that the Defendant gave him a document entitled law enforcement officer waiver of immunity, that he did not understand the document, and that he gave the document to the "police association." He said that the Defendant did not appear worried or scared during the traffic stop and that the Defendant's demeanor was not threatening.

Memphis Police Sergeant Dennis Manning testified that on June 23, 2010, he worked traffic enforcement and that the Defendant's car was stopped because the window tint was too dark. He said that Officer Turner stopped the Defendant's car and that Officer Jones obtained the Defendant's driver's license, determined that the window tint was too dark, and checked the Defendant's driver's license to determine who he was and to issue a ticket. He said they learned that the Defendant had an outstanding arrest warrant. He said that Officer Jones asked the Defendant to step out of the car and that a handgun was found when Officer Jones frisked the Defendant. He said the gun was semi-automatic, black and gray or silver, and about seven inches long. He said he stood at the left passenger-side door during the stop.

Sergeant Manning testified that the Defendant was calm and appeared to understand what was happening. He said the handgun was tucked in the waistband of the Defendant's pants. Officer Jones gave him the handgun, which was unloaded. He said the Defendant did not provide a valid handgun permit.

Shelby County Criminal Court Deputy Clerk Stephanie Herbin testified that she was the keeper of the records and that the Defendant's court record showed previous convictions for three counts of aggravated burglary, Class C felonies. Certified copies of the convictions were received as an exhibit. She said that each defendant was assigned a unique "R&I" number and that the court file regarding the aggravated burglary convictions showed the Defendant's number was 340057. On cross-examination, she stated that the indictment showed that the Defendant was found in possession of a handgun between June 21, 2010, and June 24, 2010.

Rachel Bowen, a fingerprint identification expert, testified that she worked for the Shelby County Sheriff's Department in the Criminal History, Records, and Identification Department. She said she obtained fingerprints of persons arrested and brought to the Shelby County Criminal Justice Center. She identified the sheriff's department's file regarding the Defendant, which showed his R&I number was 340057. She obtained the Defendant's fingerprints earlier that day and said the Defendant's fingerprints matched the fingerprints of the person with R&I number 340057.

The Defendant chose not to testify and presented no proof. The jury convicted him of being a felon in possession of a handgun. This appeal followed.

**I**

The Defendant contends that the evidence is insufficient to support his conviction. He argues that the fingerprints used to establish his identity were obtained in violation of the Fifth Amendment. He also argues that the State failed to show a "link between the individual arrested on June 23, 2010 with the gun and the individual convicted of Aggravated Burglary[.]" He claims that the State failed to show a comparison between the fingerprints of the person arrested on June 23, 2010, and the person identified as having R&I number 340057. The State responds that the evidence is sufficient. We agree with the State.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not reweigh the evidence but presume that the trier of fact has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. *See State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility are resolved by the jury. *See State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

"A person commits an offense who possess a handgun and has been convicted of a felony." T.C.A. § 39-17-1307(c)(1). An offense under this subdivision is a Class E felony. *Id*. § 39-17-1307(c)(2).

Regarding the Defendant's claim that his fingerprints were obtained in violation of the Fifth Amendment, the State first contends that the Defendant's constitutional argument is waived because it is inconsistent with the Defendant's position at the trial. The State, also, contends that the issue is waived because it was not raised in the motion for a new trial.

The record shows that before the trial began, the prosecutor told the trial court and the Defendant that it wanted to fingerprint the Defendant outside the jurors' presence in order to show the Defendant's fingerprints matched those associated with his R&I number. The court told the Defendant that permitting a defendant to be fingerprinted was "normally done in these cases" and that it was going to allow the State to obtain his fingerprints during the lunch break. We note that the Defendant did not object or request time to discuss the matter with advisory counsel. *See* Tenn. R. Evid. 103(a)(1) (requiring a timely objection regarding

-4-

the admission of evidence that states the specific ground of objection if it is not apparent from the context).

We note that the Defendant failed to raise an issue regarding the fingerprints in his motion for a new trial. *See* T.R.A.P. 3(e) (stating that "in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived"). We conclude that the constitutional issue is waived because he failed to raise the issue in his motion for a new trial.

In the light most favorable to the State, the record reflects that the Defendant's car was stopped by the police. The police found a handgun in the waistband of his pants. The record keeper for the Shelby County Criminal Court testified that the Defendant's assigned R&I number was 340057 and that he had three previous aggravated burglary convictions, which were Class C felonies. Certified copies of the judgments were received as an exhibit. Rachel Bowen, an expert in fingerprint identification, testified that the sheriff's department's file regarding the Defendant showed his R&I number was 340057 and that the file contained the Defendant's fingerprints. She obtained the Defendant's fingerprints the day of the trial, compared those fingerprints to the fingerprints in the sheriff's department's file, and concluded that the fingerprints matched.

We conclude that the jury could have found beyond a reasonable doubt that the Defendant was a felon in possession of a handgun. The evidence is sufficient to support his conviction. He is not entitled to relief on this basis.

**II**

The Defendant contends that the trial court denied his right to counsel. He argues that he did not waive his right to counsel and that the court failed to obtain a knowing and intelligent waiver of his right to counsel. Alternatively, he contends that the trial court denied his right to counsel by appointing advisory counsel who failed to assist him properly. He argues that had counsel assisted him properly, he would have filed the proper pretrial motions to suppress the traffic stop, that he would have known the rules of procedure required him to provide pretrial notice of the witnesses he wished to present at the trial, and that he would have known the possible incriminating effects of providing his fingerprints at the trial. The State responds that the issue is waived because the Defendant failed to raise it in the trial court, that he failed to request plain error review, and that plain error review is not necessary to do substantial justice. We agree that the Defendant is not entitled to relief.

A criminal defendant has a right to be represented by counsel under both the United States and Tennessee Constitutions. U.S. Const. Amend. VI; Tenn. Const. art. I, § 9. A criminal defendant also has a Sixth Amendment right to proceed pro se. *Faretta v. California*, 422 U.S. 806, 819 (1975); *State v. Northington*, 667 S.W.2d 57, 60 (Tenn. 1984). In order to invoke the right to proceed pro se, a defendant must meet three requirements: 1) the defendant must timely assert the right to self-representation, 2) the request must be clear and unequivocal, and 3) the defendant must knowingly and intelligently waive the right to the assistance of counsel. *State v. Herrod*, 754 S.W.2d 627, 629-30 (Tenn. Crim. App. 1988). The rule requires that before accepting a waiver, the court must advise the defendant of his right to counsel at all stages of the proceedings and determine whether there is a competent and intelligent waiver by questioning the defendant about his background and experience. Tenn. R. Crim. P. 44(b)(1). A defendant is not required to have any type of legal education or training to assert the right to self-representation. *State v. McCary*, 119 S.W.3d 226, 256 (Tenn. Crim. App. 2003). The rule also requires that a written waiver be executed and that it be made part of the record. Tenn. R. Crim. P. 44(b)(2).

In the present case, the Defendant argues that the trial court failed to obtain a knowing and intelligent waiver of his right to counsel before permitting him to proceed pro se at the trial. He only states in his brief that "[p]rior to the start of the trial, appellant requested he be able to proceed pro se and the court granted his request." *See* T.R.A.P. 27(a)(7)(A). The Defendant also failed to raise the issue in his motion for a new trial. *See* T.R.A.P. 3(e), 36(a). The issue is waived. Our review is limited to consideration of whether plain error occurred.

Upon this court's own motion, the record was supplemented with transcripts relevant to the Defendant's request to proceed pro se. The record reflects that at the February 4, 2011 arraignment, the trial court advised the Defendant that the grand jury returned the indictment alleging that he was a felon in possession of a handgun. The court told the Defendant that the offense carried a possible sentence of one to six years and a fine of up to $3500. The court asked if the Defendant understood the charge, and the Defendant said, "No, Your Honor. I do not concede and waive benefits." Upon further discussion, the Defendant stated that he did not understand the "nature of this action" and that he was invoking "Cumbalai jurisdiction and pokelare persona proceedings of jurors and not proceed." The court asked the Defendant if he was going to be able to hire an attorney, and he said, "I'm going to defend myself[.]" When the court asked if the Defendant had represented himself previously, the Defendant said he had. Although the Defendant was unfamiliar with the rules of evidence and criminal procedure, he said he would familiarize himself with the rules. The court said it would permit the Defendant to proceed pro se if he wanted, and the Defendant expressed his desire to represent himself.

At the February 24, 2011 court appearance, the trial court inquired about the Defendant's desire to represent himself. The Defendant denied having studied the law. He denied having represented himself previously but said the current charge was dismissed in the general sessions court without his knowledge, preventing him from representing himself there. When asked if he understood that he was indicted for being a felon in possession of a handgun, he said he did not understand. The Defendant took issue with the date range contained in the indictment and said he did not plan to take "anything to trial." The court continued to inquire about whether the Defendant was making a knowing decision to represent himself, but the Defendant wanted to address other issues. When asked if he understood the possible punishment, the Defendant requested time to "research things." The Defendant said he did not understand the "whole process." The court responded that his not understanding was the reason it was recommending that counsel represent him. The court stated that an attorney would explain the process and discuss with him his options and what was in his best interest. The Defendant requested the court refer him to an attorney, which it declined to do. The court stated, though, that it was its "strong recommendation" that he obtain an attorney to represent him "so that [he had] a full understanding of the decisions" he made. The Defendant agreed to consult an attorney.

At the next court appearance on April 14, 2011, trial court inquired about the Defendant's obtaining an attorney. The Defendant denied that he told the court previously he would obtain counsel and said that he told the court he would consult an attorney. The Defendant said he had consulted an attorney but had determined it was not in his best interest to hire an attorney, and he requested a dismissal of the charges. The Defendant stated that he had filed "paperwork" but that the State had not responded. The prosecutor had received the Defendant's paperwork but wanted a hearing date scheduled before filing a response. The court asked the Defendant if he was going to hire an attorney, and he said he was not. The court stated that it was going to permit the Defendant to represent himself. The court told the Defendant he would be subject to the rules of evidence and criminal procedure at a trial and would receive no special treatment. It scheduled a hearing date related to the Defendant's filings and a trial date. The judge noted that the Defendant had mailed documents to the judge's house. The judge returned the documents to the Defendant, told him to send all future documents to the clerk's office for filing, and threatened to hold the Defendant in contempt if he sent any future documents to his house. The Defendant responded by denying he made any threatening statements in the documents.

The Defendant's case was scheduled for trial on July 5, 2011. The trial court asked the Defendant if he was ready for the trial, and the Defendant said he filed a motion for an extension of time to gather evidence and information. The judge asked for more information regarding his motion and told the Defendant that if an attorney came to court requesting a continuance on trial day, he would ask the attorney the same question. The Defendant

objected and said, "I didn't go to school for eight or nine years to be a licensed attorney, so it [is] harder for me to understand[] . . . the Rules of the Court . . . Tennessee Rules of Civil Procedure, or just pretty much anything. . . ." The court interrupted and told the Defendant to "stop that" because the court had previously warned him that he was not educated in the law and gave him time to consult an attorney. The court noted the Defendant decided to represent himself against its advice and said it told the Defendant that he would be held to the same standards as counsel. The Defendant asked why the court was saying these things, and the court said it wanted to make clear that he would not receive special treatment.

The trial court asked again why the Defendant needed more time to prepare for the trial. The Defendant claimed the law entitled him to one extension, but the court told him the law guaranteed him three weeks from the date of the indictment. The Defendant said that he needed an extension because he was not an attorney and was representing himself and that an extension was to ensure due process of law. The court disagreed, and the Defendant stated that he needed time to "gather all facts of this cause of action and [e]nsure that all the evidence and information is placed in and on the record for proper procedure in accordance with the Constitution of the United States . . . and the Constitution of the State of Tennessee." The court noted that the trial date was determined on April 14, three months previously, and said the Defendant had plenty of time to prepare. The Defendant said he needed more time to prepare his defense because he could not learn the law in two and one-half months. The court said the Defendant was indicted eight months previously and asked what he had been doing during that time. The Defendant said he had been learning to proceed properly in the courtroom but could not provide specifics.

The trial court stated that it seemed the Defendant had done nothing to prepare for the trial and claimed the Defendant's motion for an extension was "frivolous" and was an attempt to "get more time." The Defendant said he had attempted unsuccessfully to interview witnesses and had problems obtaining information from the clerk's office. When the court asked the Defendant to explain the problems he had with the clerk's office, the Defendant said,

> In actuality, I need time to work on subpoenas. I need time to actually respond. I didn't have the ample time to respond to his motion, because on the day that he gave it to me the last time, two days before he had just mailed it. So when he gave it to me in Court, I didn't know anything about it. I get home, it is on my door step. You see how it related and I can't get it, today, or when I get home and then come and have the answer in two weeks, or a month.

When the judge asked to what motion he referred, the Defendant said the State's "alibi defense." He said that he had researched the document and that he did not understand the terminology. When asked if he understood what an alibi was, the Defendant told the court he was "trying" and asked for the court to "work with him." The judge did not believe the Defendant was trying and said the Defendant was trying the court's patience. The judge stated that he had "bent over backwards trying to explain" why the Defendant needed an attorney.

The trial court gave the Defendant a few minutes to think of additional reasons why it should grant his motion for an extension. The Defendant said he needed more time to research fully the relevant statutes. The court granted the Defendant's motion and told the Defendant it would be the last extension. The court appointed advisory counsel and explained to the Defendant that counsel would answer his questions about procedures, rules, statutes, and anything else. The court told the Defendant that he was not required to consult advisory counsel but that counsel would be available to him. The Defendant said he understood. The court stated again that it advised the Defendant he needed legal representation because he was making "error, after error" but that it was the Defendant's right to represent himself. The Defendant said he would not hire advisory counsel but would use him as a source of information. The trial was rescheduled. The prosecutor gave the Defendant additional discovery, and the Defendant asked the court if he was required to respond to the State's discovery. The court told the Defendant that he needed to hire an attorney and that the court could not help him. The Defendant denied he was asking the court to represent him.

The record does not contain a written waiver of the Defendant's right to counsel and fails to show that the trial court requested the Defendant sign a waiver. The Defendant, though, asserted his right to represent himself before the trial. The court questioned the Defendant at numerous court appearances about the Defendant's legal and procedural knowledge, experience representing himself, the charges against him, and the potential punishment and fines if convicted. The court recommended numerous times that the Defendant obtain counsel and advised of the perils of self-representation. At the request of the trial court, the Defendant consulted an attorney before the trial, but he concluded that it was not in his best interest to hire an attorney and expressed his desire to represent himself. The Defendant's request to represent himself was clear and unequivocal. At the first scheduled trial date, about eight months after the indictment was returned, the court appointed advisory counsel. The Defendant said he understood he was not required to consult advisory counsel and could use counsel to understand the relevant statute, rules of procedure, and rules of evidence. Although the trial court failed to obtain a written waiver from the Defendant, we conclude that the Defendant made a knowing and intelligent waiver of his right to counsel. He is not entitled to relief on this basis.

Regarding the Petitioner's claim that the trial court violated his right to counsel because it appointed advisory counsel who failed to assist him properly, the Defendant failed to raise the issue in his motion for a new trial and raises the issue for the first time on appeal. *See* T.R.A.P. 3(e), 36(a). We conclude that the issue is waived and that he is not entitled to plain error relief. The record shows that advisory counsel did not speak at the trial. During the *Momon* hearing, the court asked the Defendant if he had discussed with advisory counsel whether the Defendant should testify at the trial, noting that the Defendant had "discussed things" with advisory counsel several times throughout the trial. The Defendant responded that he had not discussed with advisory counsel his testifying at the trial. The trial court asked if the Defendant wanted to discuss the matter, and the Defendant said he did. A recess was taken to allow the Defendant and advisory counsel to talk, after which the *Momon* hearing resumed, and the Defendant declined to testify.

Likewise, the Defendant cross-examined each of the State's witnesses, except Sergeant Manning, who provided similar testimony as Officers Thomas and Jones. The Defendant communicated with advisory counsel during the trial, and the trial court afforded the Defendant the opportunity to discuss with advisory counsel his decision whether to testify at the trial. Advisory counsel provided advice to the Defendant without actively participating in the presentation of the defense. The Defendant is not entitled to relief.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON,  PRESIDING JUDGE