IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 22, 2002 Session

## STATE OF TENNESSEE v. JOSEPH ANTONIO HOUGH

**Direct Appeal from the Criminal Court for Hamblen County**
**No. 98-CR-113      Kindall Lawson, Judge**

---

**No. E2000-02728-CCA-R3-CD      Filed July 11, 2002**

---

The appellant, Joseph Antonio Hough, was convicted of two counts of delivering cocaine and was sentenced as a Range II offender to a total effective sentence of twenty-three years incarceration in the Tennessee Department of Correction. On appeal, the appellant raises the following issues for our review: (1) whether the trial court committed legal error by allowing the appellant to represent himself, and (2) whether the trial court erred in sentencing the appellant. Upon review of the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JAMES CURWOOD WITT, JR., JJ., joined.

Joseph Antonio Hough (at trial), Mountain City, Tennessee, Pro Se, and Gerald L. Gulley, Jr. (on appeal), Knoxville, Tennessee, for the appellant, Joseph Hough.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; C. Berkeley Bell, District Attorney General; and Chris Scruggs, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

The Hamblen County Grand Jury charged the appellant by presentment with one count of delivering .5 grams or less of cocaine and one count of delivering .5 grams or more of cocaine in violation of Tenn. Code Ann. § 39-17-417(c) (1997). The trial court appointed a member of the local public defender's office to represent the appellant. Some months before trial, the appellant appeared before Judge Ben K. Wexler and requested that he be allowed to proceed pro se. Although the hearing before Judge Wexler is not a part of the record on appeal, it is apparent from the record that the court granted the appellant's motion and appointed the public defender as "elbow counsel." The court also ordered a competency evaluation. The record contains copies of both of

the evaluation letters. On April 6, 1999, mental health professionals from the Middle Tennessee Mental Health Institute (MTMHI) found the appellant competent to stand trial. Furthermore, on February 29, 2000, the MTMHI clinical staff concluded that "[the appellant] does have the ability to participate in and understand the legal consequences of his decisions to represent himself pro se and the effects of a conviction on his liberty."

On the morning of trial, Judge Kindall Lawson, who had later been assigned to hear the case, began by noting that the appellant had chosen to proceed pro se and then asked the appellant to confirm this arrangement. The appellant responded that the public defender's office was not competent to represent him, and he preferred to represent himself rather than be represented by members of the public defender's office. The trial court apprised the appellant that he was facing charges of delivery of cocaine, and the appellant acknowledged that he was aware of the charges he was facing. The appellant further recognized that he had the right to be represented by an attorney. The trial court advised the appellant that, in order to proceed pro se, the appellant would need to know how to subpoena the necessary witnesses and present his case. The appellant informed the court that he intended to present an entrapment defense and a necessity defense at trial and that the public defender's office refused to present such defenses. The trial court informed the appellant that the entrapment defense was "complicated," explaining that "[i]n fact, you might even have to say that you did it but that you were entrapped into doing it." The appellant stated that he understood the defense and wished to pursue it; however, the public defender expressed to the court his belief that the proof did not support an entrapment defense. The trial court initially denied the appellant the right to represent himself. However, following further discussion with the appellant and the public defender concerning their conflict regarding the defenses to be presented at trial, the trial court agreed to allow the appellant to proceed pro se.

> In allowing the appellant to represent himself, the trial court warned the appellant:
> If you are not going to cooperate with the public defender in any way, and you insist that they have some sort of conflict, and you, therefore, apparently chose to present your case, you're going to have that choice. I'm going to let you do it if you want to, but I'm going to hold you to the same rules that I would the best lawyer in town. I'm not going to let you ramble on with irrelevant things, and ask irrelevant questions, and do things that make no sense. We're going to try the case and we're going to do it by the rules. And if you don't know the rules, then that's going to be a problem for you.

The trial court further admonished the appellant that he would be required to know the rules of evidence and "they're not simple." The appellant informed the trial court that "I've read the rules." The trial court also asked the appellant if he had ever conducted a jury trial and the appellant responded that he had not, but he had "been in two" trials previously. He further responded that he had "read up on" how to voir dire the jury. The trial court retorted, "You read on it. Sir, it may be kind of like heart surgery; I could read several books but I'm not too sure I could do it. All I can do is to tell you that I think you're wading in deep water here." The appellant advised the court that "I know we get eight premataries." After some discussion, the court discerned that the appellant was

referring to peremptory challenges. The appellant again insisted that he be allowed to present his own defense and told the court that he wished to do so dressed in his prison attire as "part of my defense." The trial court informed the appellant that the court was "not too sure you can fly with [the necessity defense,]" once again unsuccessfully cautioned the appellant against representing himself, and proclaimed that the trial would start on schedule. As a precautionary matter, Judge Lawson, like Judge Wexler, appointed the public defender, who had averred that he was prepared to go to trial, as standby counsel for the appellant.

At trial, the State presented the testimony of Sergeant Dwayne Collins of the Morristown Police Department. Sergeant Collins stated that, on July 29, 1997, he was working as a member of the Third Judicial District Drug Task Force. The task force was then employing the assistance of an informant, Terri Seabrook. Sergeant Collins noted that Seabrook was a former Tennessee State Trooper. He acknowledged that Seabrook was paid $100 in compensation for each transaction. On the day of the first offense, the police searched Seabrook's person and her vehicle and gave her money to make a controlled drug buy. Seabrook proceeded to the Ebony Outdoorsman Club and spoke with "Little Johnny," whom Sergeant Collins identified as the appellant. After leaving the club, the appellant accompanied Seabrook to her residence and sold her ten "rocks" of crack cocaine for $160. Sergeant Collins further testified that, on October 1, 1997, after the police once again searched her person and her vehicle, Seabrook returned to the Ebony Outdoorsman Club. Unable to find someone from whom to purchase drugs, Seabrook returned to her residence. However, shortly after her return, the appellant appeared at her home. The appellant then sold Seabrook fourteen "rocks" of crack cocaine for $200.

The State next presented the testimony of David Holloway, a forensic drug chemist with the Tennessee Bureau of Investigation (TBI) crime laboratory. Holloway testified that the substance recovered from the July sale was .4 grams of cocaine base, otherwise known as crack cocaine. Holloway identified the substance bought in October as .9 grams of cocaine base.

Finally, the State presented the testimony of Seabrook. Seabrook explained that she was working as a cooperating individual with the Drug Task Force, and, on July 29, 1997, the police searched her and her car before she went to the Ebony Outdoorsman Club. She went to the club looking for someone from whom she could buy drugs. Therein, she encountered "Little Johnny," whom she identified as the appellant, and drove him to her house. At her residence, the appellant gave her ten "rocks" of crack cocaine in exchange for $160. On October 1, 1997, she returned to the club but was unable to find anyone to sell her drugs. She returned to her home where, shortly thereafter, the appellant arrived and sold her fourteen "rocks" of crack cocaine for $200.

The appellant testified in his own behalf, claiming a defense of entrapment and necessity. He admitted that he had sold the drugs to Seabrook on both occasions. However, he argued to the jury that he was entrapped by the police into selling drugs because Seabrook was a former state trooper. Additionally, the appellant attempted to convince the jury that he was forced to sell the drugs to support his newborn child.

At the conclusion of the proof, the jury convicted the appellant of one count of delivering .5 grams or less of cocaine, a Class C felony, and one count of delivering .5 grams or more of cocaine, a Class B felony. The trial court sentenced the appellant as a Range II offender to eight years incarceration for the Class C felony conviction and to fifteen years incarceration for the Class B felony conviction and ordered that the sentences be served consecutively. On appeal, the appellant argues that his waiver of the right to counsel was neither voluntary nor knowing and that the trial court erred in sentencing him.

## II. Analysis
### A. Self-Representation

The United States Constitution and the Tennessee Constitution both guarantee an indigent defendant the right to be represented by appointed counsel during a criminal trial. See U.S. Const. amend. VI; Tenn. Const. art. I, § 9. Likewise, "[j]ust as there is the right to assistance of counsel at trial, there is the alternative right to self-representation." State v. Gillespie, 898 S.W.2d 738, 740 (Tenn. Crim. App. 1994); see also Faretta v. California, 422 U.S. 806, 819-20, 95 S. Ct. 2525, 2533 (1975) ("The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense . . . for it is he who suffers the consequences if the defense fails."); State v. Small, 988 S.W.2d 671, 673 (Tenn. 1999). "The right to represent oneself, however, should be granted only after a determination by the trial court that the defendant is both knowingly and intelligently waiving the valuable right to assistance of counsel." Small, 988 S.W.2d 673.

There are three essential prerequisites to activating the right of self-representation. First, the right to proceed pro se must be timely asserted. State v. Herrod, 754 S.W.2d 627, 629 (Tenn. Crim. App. 1988). Second, the accused's request to proceed pro se must be clearly and unequivocally made. Id. at 630. Third, the "accused must knowingly and intelligently waive the right to the assistance of counsel." Id. Additionally, we note that "Rule 44(a) of the Tennessee Rules of Criminal Procedure provides that indigent defendants should execute a written waiver before being allowed to proceed pro se."[1] State v. Mohamed F. Ali, Nos. 03C01-9802-CR-00065 and 03C01-9809-CR-00310, 1999 Tenn. Crim. App. LEXIS 871, at *6 (Knoxville, Aug. 24, 1999). The appellant's sole complaint on this issue is that his waiver of the right to counsel was neither knowing nor voluntary.

---

[1] Specifically, Tenn. R. Crim. P. 44(a) provides:

> Every indigent defendant shall be entitled to have counsel assigned to represent him in all matters necessary to his defense and at every stage of the proceedings, unless he executes a written waiver. Before accepting such waiver the court shall first advise the accused in open court of his right to the aid of counsel in every stage of the proceedings. The court shall, at the same time, determine whether there has been a competent and intelligent waiver of such right by inquiring into the background, experience and conduct of the accused and such other matters as the court may deem appropriate. Any waiver shall be spread upon the minutes of the court and made a part of the record of the cause.

We first observe that the record before us contains no explicit written waiver of the right to counsel. See Tenn. R. Crim. P. 44(a). However, we again note that the hearing before Judge Wexler is not part of the record. We caution that "[i]t is the [appellant's] duty to have prepared an adequate record in order to allow a meaningful review on appeal." State v. Goodwin, 909 S.W.2d 35, 43 (Tenn. Crim. App. 1995). Regardless, the appellant does not complain about the lack of written waiver. Moreover, it is clear from the multitude of pro se motions in the record, including two motions to proceed pro se, that the appellant clearly sought to represent himself at trial without the assistance of counsel. This court has previously held that such proof satisfies the requirement for a written waiver of the assistance of counsel. See Goodwin, 909 S.W.2d at 39.

Typically, a motion to proceed pro se must be made prior to trial in order to be considered timely. State v. Northington, 667 S.W.2d 57, 62 (Tenn. 1984); see also State v. Mark S. Bodine, No. 03C01-9111-CR-00368, 1994 Tenn. Crim. App. LEXIS 174, at *3 (Knoxville, Mar. 25, 1994). The record indicates that the appellant made a motion to proceed pro se months before trial. Notably, the appellant began submitting pro se motions to the court as early as August 19, 1999, and, on March 15, 2000, submitted a "Motion to dismiss Attorney/Proceed Pro-Se." On the day of trial, the trial court simply reaffirmed the appellant's desire to proceed pro se. We find that the evidence is sufficient to conclude that the appellant timely moved to proceed pro se.

Next, we examine whether the appellant's request to proceed pro se was clear and unequivocal. The appellant insisted numerous times prior to and on the day of trial that he wished to represent himself. Although the appellant remarked that "I'd rather do it myself if [the public defender] got to do it. I don't trust them," our supreme court has advised that

> [t]he right of an accused to assistance of counsel, however, does not include the right to appointment of counsel of choice, or to special rapport, confidence, or even a meaningful relationship with appointed counsel. The essential aim of the Sixth Amendment is to guarantee an effective advocate, not counsel preferred by the defendant.

State v. Carruthers, 35 S.W.3d 516, 546 (Tenn. 2000), cert. denied, 533 U.S. 953, 121 S. Ct. 2600 (2001) (citations omitted); see also State v. Timothy M. Reynolds, No. M1998-00059-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 15, at *14 n. 2 (Nashville, Jan. 7, 2000) (stating that "[a] defendant does not have the right to appointed counsel of his choice"). The trial court repeatedly advised the appellant that the public defender's office could adequately represent the appellant. In response, the appellant adamantly insisted that he desired to "present my evidence," and maintained that "I can do my case." The appellant again asserted that he wanted to be allowed to represent himself. We conclude that the appellant's insistence on self-representation was clear and unequivocal.

Finally, we must determine whether the appellant knowingly and intelligently waived his right to counsel. In order to determine the knowing nature of the appellant's waiver, our courts have suggested that trial courts follow the guidelines contained in 1 Bench Book for United States District Judges 1.02-2 to -5 (3d ed. 1986), also contained in the appendix to United States v.

McDowell, 814 F.2d 245, 251-52 (6th Cir. 1987). Herrod, 754 S.W.2d at 630. Additionally, the United States Supreme Court has instructed:

> [A] judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

Von Moltke v. Gillies, 332 U.S. 708, 723-24, 68 S. Ct. 316, 323 (1948).

While the instant court did not mechanically ask all of the questions suggested, we conclude that the court substantially complied with the suggested format. See Goodwin, 909 S.W.2d at 41-42. The trial court warned the appellant of the dangers of self-representation, particularly because the appellant had a tendency to seem "disorganized." See State v. Vincent Hatch, No. W2000-01005-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 849, at *16 (Jackson, Oct. 19, 2001). The court further warned the appellant that he would need to be familiar with the rules of evidence, the voir dire procedure, and the subpoena process. The court also cautioned the appellant that he would be held to the same standard as "the best lawyer in town." The appellant asserted that he had "read up on" the rules of evidence and was familiar with other court procedures.[2] The court inquired as to whether the appellant had previously represented himself in a jury trial. The appellant denied previous self-representation, but advised that he had "been in two" trials previously. The appellant also recognized that he could be sentenced as a Range II offender and that he was facing charges of the delivery of drugs to Seabrook. See Ali, Nos. 03C01-9802-CR-00065 and 03C01-9809-CR-00310, 1999 Tenn. Crim. App. LEXIS 871, at *11. Additionally, the trial court and the appellant discussed potential defenses and lesser-included offenses. Nevertheless, the appellant repeatedly maintained, despite the trial court's advice to submit to the representation of counsel, that he wished to represent himself and told the court, "I can do my case." See State v. Simmie Black, No. 02C01-9803-CR-00081, 1999 Tenn. Crim. App. LEXIS 453, at *14 (Jackson, May 7, 1999). Furthermore, the trial court required the public defender to remain as standby counsel for the appellant during trial, although the record is unclear as to whether the appellant ever utilized the attorney's advice. Id. at *15; see also Hatch, No. W2000-01005-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 849, at **16-

---

[2] In the appellant's "Motion to dismiss Attorney/Proceed Pro-Se," the appellant states:
> The defendant is 30 years of age and has an college education. The defendant is knowledgable of the procedure and rules of court, in which I have file numerous motion without an answer or order concerning the motion.

17. However, during trial the public defender did attempt to clarify certain matters for the trial court. We also note that the public defender and the appellant both recognized the appellant's competency to stand trial, a strong indicator of his competency to waive the right to counsel. See Godinez v. Moran, 509 U.S. 389, 398, 113 S. Ct. 2680, 2686 (1993). Moreover, the trial court acknowledged two separate reports from mental health professionals who deemed the appellant competent to stand trial and competent to proceed pro se. See Clifton D. Wallen v. State, No. E2000-02052-CCA-R3-PC, 2001 Tenn. Crim. App. LEXIS 540, at *9 (Knoxville, July 25, 2001), perm. to appeal denied, (Tenn. 2001); State v. Clyde Turner, No. W1999-00797-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 416, at *8 (Jackson, May 24, 2000) (stating that "[t]he standard of competency for waiving the right to counsel is the same as that for standing trial"). Based upon the foregoing, we conclude that the appellant knowingly and intelligently waived the right to the assistance of counsel at trial.


### B. Sentencing

The appellant also argues that the trial court erred in sentencing him because the court failed to consider an applicable mitigating factor and the court improperly imposed consecutive sentencing.[3] As a preliminary matter, we observe that there is no affirmative showing in the record that the trial court adequately considered the sentencing principles; therefore, we will review the trial court's determinations de novo without a presumption of correctness. Tenn. Code Ann. § 40-35-401(d) (1997); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In any event, the burden is on the appellant to demonstrate the impropriety of his sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

We must consider the following factors in the course of our de novo review: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the appellant in his own behalf; and (7) the appellant's potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-102 and -103 (1997), -210 (Supp. 2001); see also Ashby, 823 S.W.2d at 168. A copy of the presentence report, which was obviously employed by the trial court in sentencing the appellant, is absent from the record on appeal. The appellant has the duty to prepare a record which conveys a fair, accurate, and complete account of the events in the trial court regarding the issues underlying his appeal. State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983). Because of this omission, the appellant has arguably waived his issues on appeal concerning sentencing. Tenn. R. App. P. 24(b). However, we choose to address his concerns based upon the record before us.

Initially, we note that, the presumptive sentence for a Class B or Class C felony is the minimum sentence in the absence of enhancement or mitigating factors. Tenn. Code Ann. § 40-35-

---

[3] We note that the appellant, acting pro se at his sentencing hearing, suggested no mitigating factors for the trial court to consider.

210(c) (Supp. 2001). However, if there are enhancement factors but no mitigating factors, the trial court may set the sentence above the minimum but still within the range. Id. at (d). However, if there are both enhancement factors and mitigating factors, "the court must start at the minimum sentence in the range, enhance the sentence within the range as appropriate for the enhancement factors, then reduce the sentence within the range as appropriate for the mitigating factors." Id. at (e). Because the appellant is a Range II offender, the proper range for the appellant's sentence is between six to ten years for the Class C felony and between twelve to twenty years for the Class B felony. Tenn. Code Ann. § 40-35-112(b)(2) and (3) (1997).

In sentencing the appellant, the trial court found the presence of three enhancement factors. First, the trial court noted that the appellant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. Tenn. Code Ann. § 40-35-114(1) (1997). The sentencing hearing transcript reflects that the appellant had at least two prior felony convictions, which established that the appellant is a Range II offender. Tenn. Code Ann. § 40-35-106(a)(1) and (c) (1997). Seabrook testified at trial that she had bought drugs from the appellant "for years." Moreover, the appellant conceded that he has committed more offenses than the two felony offenses. Specifically, the appellant admitted that he sold drugs as a way of providing support for his son and his son's mother. We conclude that application of this enhancement factor was appropriate.

The trial court also found that the appellant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community. Tenn. Code Ann. § 40-35-114(8). The appellant conceded at trial and at the sentencing hearing that he previously failed to complete a "boot camp" program and repeatedly sold drugs while on probation. Moreover, the appellant admitted that a probation revocation warrant had been previously issued against the appellant due to a failed drug screen. Accordingly, we conclude that the record sufficiently indicates that the appellant has violated his probation on more than one occasion.

The trial court also found enhancement factor (13):
The felony was committed while on any of the following forms of release status if such release is from a prior felony conviction:
(A) Bail, if the defendant is ultimately convicted of such prior felony;
(B) Parole;
(C) Probation;
(D) Work release; or
(E) Any other type of release into the community under the direct or indirect supervision of the department of correction or local governmental authority.
Tenn. Code Ann. § 40-35-114(13). The record indicates that the appellant committed the instant offenses while on probation for a felony offense. Id. at (C). Thus, this enhancement factor was correctly applied.

The appellant argues that the trial court should have considered as a mitigating factor that his conduct neither caused nor threatened serious bodily injury. Tenn. Code Ann. § 40-35-113(1) (1997). This court has previously discouraged the use of this mitigating factor in cases involving cocaine. See State v. Vanderford, 980 S.W.2d 390, 407 (Tenn. Crim. App. 1997). However, our supreme court recently refuted the idea of a per se denial of this mitigating factor in all cases involving cocaine. State v. Ross, 49 S.W.3d 833, 848-49 (Tenn. 2001). Regardless, our supreme court left open the denial of this mitigating factor depending on the facts in a given case. Id. at 848. In the instant case, the appellant met with Seabrook on two occasions and sold her crack cocaine. While the amount sold was not insignificant, we recognize that neither was it particularly large. See State v. Richard Lynn Norton, No. E1999-00878-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 637, at *23 (Knoxville, Aug. 22, 2000), perm. to appeal denied, (Tenn. 2001). Accordingly, the trial court should have considered this mitigating factor. Nonetheless, no especial weight need be given to this mitigation factor. Ross, 49 S.W.3d at 849. Thus, we conclude that, even though the trial court should have considered this mitigation factor, the length of the appellant's sentences is appropriate.

The appellant also contends that the trial court erred in imposing consecutive sentences. The appellant, relying on Norton, No. E1999-00878-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 637, at *28, argues that the police could have arrested him after the first sale; therefore, his sentences should run concurrently. Additionally, the appellant contends that "[t]o base consecutive sentencing on a factor [namely the appellant's extensive criminal history] that already is used to increase the time within [the appellant's] sentencing range to almost the maximum within the range, was improper and should not have been considered by the trial court." We disagree with the appellant's arguments.

> We begin by noting that this court has previously observed that [t]here is no prohibition in the 1989 Sentencing Act against using the same facts and circumstances both to enhance sentences under applicable enhancement factors and to require those sentences to be served consecutively. In fact, this Court has previously held that consideration of prior criminal convictions and conduct for both enhancement and consecutive sentencing purposes is allowed.

State v. Meeks, 867 S.W.2d 361, 377 (Tenn. Crim. App. 1993) (citing State v. Davis, 825 S.W.2d 109, 113 (Tenn. Crim. App. 1991)); see also State v. Marshall, 888 S.W.2d 786, 788 (Tenn. Crim. App. 1994). Accordingly, the trial court did not err by using the appellant's previous criminal history to both enhance his sentence and to impose consecutive sentencing.

In addressing the appellant's remaining argument regarding consecutive sentencing, we acknowledge that cases such as Norton suggest that ordering consecutive sentences for convictions resulting from multiple controlled buys may be excessive. Norton, No. E1999-00878-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 637, at *27. The facts in the instant case are distinguishable. The majority of cases addressing this issue have involved situations in which the number of offenses was three or more. See State v. William Lewis Houston, No. M1999-01430-

CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 936, at **35-38 (Nashville, Dec. 7, 2000); Norton, No. E1999-00878-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 637, at *27; State v. John Derrick Martin, No. 01C01-9502-CR-00043, 1995 Tenn. Crim. App. LEXIS 984, at *14 (Nashville, Dec. 19, 1995); see also State v. Thornton, 10 S.W.3d 229, 244 (Tenn. Crim. App. 1999). In Norton, Martin, and Houston, *supra*, this court modified the sentences imposed and instructed the trial court to order service of a number of the imposed sentences consecutively and the remainder concurrently. However, in the instant case, there were only two controlled purchases from the appellant. Notably, the second sale was actively sought by the appellant, not by Seabrook. We conclude that there was no error in ordering the appellant's two sentences be served consecutively.

The State, does not address the appellant's argument concerning consecutive sentencing for multiple controlled drug buys, and focuses on the facts of the offenses to justify consecutive sentencing. The State initially argues that

> It would appear that the defendant was at some point released on parole. . . . In 1997, when these offenses were committed, the defendant's twelve-year sentence [for possession of .5 grams or more of cocaine with the intent to sell] had not expired. Thus, it appears that the defendant committed these offenses while on parole, and consecutive sentencing is therefore mandatory [pursuant to Tenn. R. Crim. P. 32(c)(3)(A)].

However, due to the lack of proof in the record that the appellant was on parole, not probation, at the time of the offenses, we decline to find that the appellant's consecutive sentences were mandatory.

Nevertheless, the trial court may impose consecutive sentences if the State proves by a preponderance of the evidence that the offender meets at least one of the following criteria:

> (1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation;  or

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b)(1)-(7) (1997); see, eg., Gray v. State, 538 S.W.2d 391 (Tenn. 1976); State v. Taylor, 739 S.W.2d 227 (Tenn. 1987).  In the instant case, the trial court found that the appellant had an extensive record of criminal activity.  We conclude, from the evidence in the record, that the trial court did not err in so finding.  The appellant has a history of several misdemeanor convictions, and, importantly, has a well-documented history of selling drugs.  Moreover, during trial, the appellant essentially conceded that he committed the instant offenses while on probation for a previous felony offense.  Thus, the appellant falls under two categories for permissive consecutive sentencing.  Tenn. Code Ann. § 40-35-115(2) and (6).  Considering the appellant's vast history of drug sales, his obvious lack of remorse for the crimes committed, and his high likelihood of repeated criminal behavior, we conclude that the trial court did not err in imposing consecutive sentences.  See State v. Tracy T. Bostic, Nos. M2000-02941-CCA-R3-CD and M2000-03220-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 429, at *16 (Nashville, May 13, 2002); State v. Antonio E. Jenkins, Nos. 01C01-9804-CC-00187 and 01C01-9702-CC-00047, 1999 Tenn. Crim. App. LEXIS 759, at *8 (Nashville, July 28, 1999).

We also note the appellant's complaint that the trial court erred in failing to consider whether "(1) the sentences are necessary in order to protect the public from further misconduct by the defendant and (2) 'the terms are reasonably related to the severity of the offenses,'" the so-called Wilkerson factors.  State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995).  The appellant fails to realize that, in State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999), our supreme court clarified that the Wilkerson factors are "limited to cases involving consecutive sentencing of 'dangerous offenders.'" See Tenn. Code Ann. § 40-35-115(4).  In the case sub judice, there was no proof that the appellant is a "dangerous offender"; therefore, we need not address the Wilkerson factors.

### III.  Conclusion

Based upon the foregoing, we affirm the judgments of the trial court.

_____

-11-

NORMA McGEE OGLE, JUDGE