IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

FEBRUARY 1999 SESSION

FILED

May 7, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | C.C.A. No. 02C01-9803-CR-00081 |
| Appellee, | ) | |
| | ) | Shelby County |
| v. | ) | |
| | ) | Honorable W. Fred Axley, Judge |
| SIMMIE BLACK, | ) | |
| | ) | (Aggravated Sexual Battery) |
| Appellant. | ) | |

FOR THE APPELLANT:

Handel R. Durham, Jr.
Alan Bryant Chambers
200 Jefferson Avenue, Suite 200
Memphis, TN  38103-3617
(On Appeal)

Simmie Black #94866, *pro se*
Mark Luttrell Reception Center
6000 State Road
Memphis, TN  38134
(At Trial)

Kathy Kent (elbow counsel)
Assistant Public Defender
201 Poplar Avenue, Suite 201
Memphis, TN  38103

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
425 Fifth Avenue North
Nashville, TN  37243-0493

Elizabeth T. Ryan
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN  37243-0493

William L. Gibbons
District Attorney General
201 Poplar Avenue, Suite 301
Memphis, TN  38103-1947

David B. Shapiro
Assistant District Attorney General
201 Poplar Avenue, Suite 301
Memphis, TN  38103-1947

OPINION FILED: _____

AFFIRMED

JAMES C. BEASLEY, SR., SPECIAL JUDGE

# **O P I N I O N**

On February 18, 1997, the Shelby County Grand Jury returned an indictment against the defendant, Simmie Black, charging him with aggravated sexual battery. After a jury trial in which he represented himself, Black was convicted of aggravated sexual battery and was later sentenced to serve twelve years in the Tennessee Department of Correction. The defendant filed a *pro se* notice of appeal. The trial court appointed appellate counsel on March 20, 1998.

In this appeal as of right, the defendant first challenges the sufficiency of the evidence to support his conviction and presents the following additional issues:

1. Whether there is sufficient evidence in the record to establish that the defendant knowingly and voluntarily waived the right to counsel.

2. Whether the court should have reconsidered, *sua sponte* and in trial, permitting the defendant to continue self-representation in light of his inability to comprehend and manage his lawsuit.

3. Whether the record establishes that defendant waived his right to counsel at the sentencing hearing.

4. Whether the court failed to charge lesser included offenses of sexual battery and simple assault.

The proof shows that on the evening of November 27, 1996, Vender Davis, her four children, her grandson, and the defendant were all at Ms. Davis's home. The defendant was Ms. Davis's live-in boyfriend. Ms. Davis, her two daughters, CD,[1] age 10, and Chastity Talbert, age 18, and the defendant were downstairs in the living room area. Ms. Davis's two sons and grandson were sleeping in other rooms of the apartment. Later in the evening, CD went upstairs to her mother's bedroom and went to bed. About an hour later, the defendant went upstairs. Shortly thereafter, Ms. Davis went upstairs to get some money for groceries from the defendant. As she entered the bedroom, Davis saw the defendant and CD lying sideways on top of the bed covers. CD's shorts had been pulled

---

[1]The policy of this Court is to withhold the identity of minor children involved in sexual abuse cases, identifying them only by their initials. See State v. Schimpf, 782 S.W.2d 186 (Tenn. Crim. App. 1989).

down. The defendant was wearing boxer-type shorts. Ms. Davis slapped CD on the leg "to get her out of the way to catch him in the act to see what he was doing because it didn't look right." As the child jumped up, she said, "Momma, that wasn't me. That's Simmie -- that was Simmie doing it. Simmie did that. Simmie was doing that." The child was holding a dollar bill in her hand. Ms. Davis saw the defendant's penis protruding through the opening in his shorts. He was ejaculating. The defendant claimed that he was trying to sleep and had not done anything wrong.

Chastity Talbert ran upstairs when she heard her mother screaming. She was carrying a beer bottle and used it to strike the defendant, cutting his forehead. Talbert attempted to stab the defendant, but was restrained by her mother. The defendant ran downstairs and out the front door.

CD, who was age 11 at the time of trial, testified that, after playing dominoes with her mother, sister, and the defendant, she went upstairs to bed in her mother's bedroom. She was wearing loose fitting shorts and a shirt. About an hour later, the defendant got into bed with her and lay down on his side behind her. After placing a dollar bill in her hand, the defendant pulled CD's shorts down and placed his erect penis between her legs. CD further testified that the defendant's penis was up against her private parts and that he was "trying to put it all the way."

The defendant did not testify or present any witnesses. By his questions on cross-examination, he argued that he was not guilty and sought to discredit the three witnesses for the State. He charged Vender Davis was too drunk to know what happened, attempted to show that Chastity Talbert disliked him, and alleged that CD had had prior sexual experiences and liked to watch sexually explicit movies.

In his first issue, the defendant contends that the evidence was insufficient to support his conviction for aggravated sexual battery. He claims there is no proof of an intentional touching and challenges the credibility of the State's witnesses.

3

A defendant challenging the sufficiency of the proof has the burden of illustrating to this Court why the evidence is insufficient to support the verdict returned by the trier of fact in his or her case. This Court will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

When an accused challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution in determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). We do not reweigh or reevaluate the evidence and are required to afford the State the strongest legitimate view of the proof contained in the record, as well as all reasonable and legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of witnesses, the weight and value to be given to the evidence, as well as factual issues raised by the evidence are resolved by the trier of fact, not this Court. Cabbage, 571 S.W.2d at 835. A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the witnesses for the State, and a presumption of guilt replaces the presumption of innocence. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Tennessee Code Annotated § 39-13-504(a) (Supp. 1996) defines the elements of aggravated sexual battery as:

> (a) Aggravated sexual battery is unlawful sexual contact with a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances:
>
> * * *
>
> (4) The victim is less than thirteen years of age.

4

Further, Tenn. Code Ann. § 39-13-501(6) (1991) defines "sexual contact" to include:

> the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification.

The *mens rea* required for aggravated sexual battery involving a victim less than 13 years of age has been held to include intentional, knowing, or reckless conduct. State v. Howard, 926 S.W.2d 579, 587 (Tenn. Crim. App. 1996); Tenn. Code Ann. § 39-11-301(c) (1991).

CD testified that the defendant got into bed with her, placed a dollar bill in her hand, pulled her shorts down, and placed his erect penis between her legs up against her private part, trying to put it in all the way with a "pulling" motion. To counter this proof, the defendant argues that it requires pure speculation to distinguish between his intentional involvement of CD in sexual activity and the defendant inadvertently touching her during his "own" sexual activity.

Obviously this jury based its verdict on the overwhelming, uncontradicted proof in the case rather than engaging in wild speculation. By its verdict, the jury has likewise settled any issue as to the credibility of the State's witnesses. The essential elements of this crime and the defendant's guilt thereof have been adequately established in this record. This issue is without merit.

No motion for a new trial was filed in this case; thus, the remaining issues have been waived. Tenn. R. App. P. 3(e); State v. Baker, 785 S.W.2d 132, 135 (Tenn. Crim. App. 1989); State v. Givhan, 616 S.W.2d 612, 613 (Tenn. Crim. App. 1981). However, we have elected to consider these issues.

In the next issue, the defendant contends there is insufficient evidence in the record to establish that he knowingly and voluntarily waived his right to counsel. The right to assistance of counsel in the preparation and presentation of a defense to a criminal charge is grounded in both the Tennessee and the United States Constitutions. Tenn. Const. art.

5

I, § 9; U.S. Const. amend. VI. It is settled law that there also exists an alternative right -- the right to self-representation -- which is founded on the Sixth Amendment. Faretta v. California, 422 U.S. 806, 819, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975); State v. Northington, 667 S.W.2d 57 (Tenn. 1984).

There are three pre-conditions which must be satisfied before a defendant's right to self-representation becomes absolute. "First, the accused must assert the right to self-representation timely. Second, the accused's request must be clear and unequivocal. Third, the accused must knowingly and intelligently waive the right to the assistance of counsel." State v. Herrod, 754 S.W.2d 627, 629-30 (Tenn. Crim. App.), per. app. denied (Tenn. 1988) (citations omitted).

Tennessee Rule of Criminal Procedure 44(a) provides in relevant part:

> Every indigent defendant shall be entitled to have assigned counsel in all matters necessary to the defense and at every stage of the proceedings, unless the defendant executes a written waiver. Before accepting such waiver the court shall first advise the accused in open court of the right to the aid of counsel in every stage of the proceedings. The court shall, at the same time, determine whether there has been a competent and intelligent waiver of such right by inquiring into the background, experience and conduct of the accused and such other matters as the court may deem appropriate.[2] Any waiver accepted shall be spread upon the minutes of the court and made a part of the record of the cause.

In Faretta, 422 U.S. at 835, 95 S.Ct. at 2541, the Court observed as follows:

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." (citations omitted).

---

[2]In order to adequately cover the issues raised by a potential waiver of the right to counsel, this Court recommended in Herrod, 754 S.W.2d at 630, that trial judges use the questions contained in 1 Bench Book for United States District Judges 1.02-2 21.02-5 (3d ed. 1986). These questions can also be found in the appendix to United States v. McDowell, 814 F.2d 245, 251-52 (6th Cir. 1987).

6

The record before us does not contain a written waiver of his right to counsel signed by the defendant as clearly required by Rule 44(a) of the Tennessee Rules of Criminal Procedure. While in no way condoning this omission, we have concluded from our review of the record that such error was harmless and does not preclude a finding of actual waiver. See generally State v. Goodwin, 909 S.W.2d 35, 39-40 (Tenn. Crim. App. 1995); State v. Mark S. Bodine, No. 03C01-9111-CR-00368, 1994 WL 111057 (Tenn. Crim. App., Knoxville, March 25, 1994). The appearance of the defendant with his appointed counsel and the ensuing lengthy dialogue between the trial judge and the defendant has been transcribed and made a part of the record.

We will now review the record to determine whether the three pre-conditions outlined in Herrod, 754 S.W.2d at 629-30, have been met.

On February 24, 1997, the defendant was arraigned and upon a finding that he was indigent and, at his request, the Public Defender or his deputy was appointed to represent the defendant. We are unable to determine from the record what transpired between the arraignment and January 26, 1998, when the defendant appeared in court and informed the trial judge that he wanted to represent himself in the trial which was scheduled for the next day. At this point, the defendant was still represented by Assistant Public Defender Kathy Kent.

The defendant was placed under oath and interrogated by the trial judge. The transcript of this hearing reveals that the defendant was 44 years of age and had a seventh grade education. The defendant stated he was represented by an attorney eighteen years ago when he was on trial for sexual battery and that his attorney "tricked me into some time."

The trial judge informed the defendant that if he represented himself, he would be on his own, because the judge would be unable to advise him as to how to try his case.

7

The defendant was asked if he was familiar with the evidentiary and procedural rules under which he would be tried and responded that he was. The judge further informed the defendant that he could not testify during closing argument and that if he decided to take the witness stand, he would have to ask himself questions. The defendant said he understood these procedures as well.

After expressing the opinion that the defendant would be better off with a trained attorney, the trial judge explained the range of punishment the defendant would face if convicted and warned that he could not be paroled. The judge then stated:

> You know, I've been in this business for 24 years now, 16 of its on the bench. And the people who are their own lawyers don't come out very well. They usually get convicted, and quick.

The judge further warned the defendant that he would be going up against a trained prosecutor and would be held to the same standards. After again warning him of the danger, the trial judge told the defendant:

> If you want to relieve Ms. Kent as your lawyer, I will do what we call a stand-by or elbow counsel. She will sit in this courtroom, and if you want to ask her a question about how to do something, you can ask her. She'll be available. But if you don't want to ask her, you don't have to. You can try your own case. You got it?

The defendant responded, "Yes, sir." Other than the defendant's persistent desire for self-representation and his dissatisfaction with an attorney eighteen years ago, the record fails to reveal any reason as to why he wanted to terminate the services of attorney Kent.

At the conclusion of the hearing, the trial court allowed the public defender to withdraw as counsel of record, but required her to remain as elbow counsel and granted the defendant's request for self-representation, holding that it was knowingly and understandingly made. Although not stated by the trial judge, implicit in his ruling is a finding that the defendant knowingly and understandingly waived his corresponding right to the assistance of counsel.

The trial court's ruling is adequately supported by the record. His questions substantially tracked those suggested by this Court in Herrod, 754 S.W.2d at 630. The defendant was repeatedly warned of the dangers and disadvantages of self-representation. The defendant's position remained clear and unequivocal that he and only he could properly present his case to the jury. Although the trial court granted the defendant's request to represent himself, it required court-appointed counsel, who was familiar with the case, to remain as elbow counsel to assist and advise the defendant. The record does not reveal to what extent, if any, the defendant sought or received assistance from elbow counsel during the trial and sentencing.

The request for self-representation was granted one day prior to trial; however, we cannot determine from this record as to when the request was initially made. Had this request been made at this late date as a disruptive or delaying tactic, the court would have been fully justified in denying the defendant's request to represent himself on the basis that his request was not timely made. See State v. Chadwick, 224 Tenn. 75, 78, 450 S.W.2d 568, 570 (Tenn. 1970). With no showing of such bad faith here, we hold the request was timely and that the court properly allowed the defendant to proceed *pro se*.

Without citing authority, the defendant argues that the trial court should have, *sua sponte*, reconsidered the defendant's request to represent himself during the trial, because he was doing a poor job. One of the penalties of self-representation is that the defendant is bound by his own acts and conduct and held to his record. Cole v. State, 798 S.W.2d 261, 264 (Tenn. Crim. App.), per. app. denied (Tenn. 1990). Before granting the request to proceed *pro se*, the trial court warned the defendant that he would be expected to comply with the rules of procedure and rules of evidence. In State v. Northington, 667 S.W.2d 57, 62 (Tenn. 1984) (citing Hsu v. United States, 392 A.2d 972 (D.C. App. 1978), the Supreme Court held "a valid waiver, if there is one, is made prior to trial or not at all." Thus, when a defendant chooses to proceed *pro se*, his performance at trial is not relevant as to whether there was a valid waiver made prior to trial. Northington, 667 S.W.2d at 62.

9

Likewise without merit is the defendant's contention, again without citing authority, that the trial court was required to secure a separate waiver of the right to counsel before proceeding with the sentencing hearing.

We hold that a valid waiver of the right to assistance of counsel at the trial includes the sentencing hearing absent a showing that the circumstances had changed so that the earlier waiver had become invalid. As we have heretofore noted, the legal ineptness of the defendant is not such a circumstance. See generally Cedric Stampley v. State, Shelby County No. 02C01-9707-CR-00288, 1998 WL 765711 (Tenn. Crim. App., Jackson, November 4, 1998). We note that, when requested to do so, the trial court did appoint appellate counsel for the defendant.

Finally, the defendant argues that the trial court erred by failing to charge the jury on the lesser included offenses of sexual battery and simple assault. We disagree.

The elements of assault are defined in Tenn. Code Ann. § 39-13-101(a) (1991) as follows:

> A person commits assault who:
>
> (1) Intentionally, knowingly or recklessly causes bodily injury to another;
>
> (2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or
>
> (3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

Simple assault is not a lesser grade of aggravated sexual battery, nor is it a lesser included offense under our Supreme Court's reasoning in State v. Trusty, 919 S.W.2d 305 (Tenn. 1996), and State v. Cleveland, 959 S.W.2d 548 (Tenn. 1997). Therefore, the trial court was not required to instruct the jury on simple assault.

Tennessee Code Annotated § 39-13-505 (Supp. 1996) defines sexual battery as

10

unlawful sexual contact accompanied by one of four elements: (1) force or coercion is used to accomplish the act; (2) sexual contact is accomplished without the consent of the victim; (3) the defendant knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless; or (4) sexual contact is accomplished by fraud. Sexual battery is a lesser grade offense of aggravated sexual battery, but where the evidence in a record clearly shows that the defendant was guilty of the greater offense and is devoid of any evidence permitting an inference of guilt of the lesser offense, the trial court's failure to charge on a lesser offense is not error. State v. Stephenson, 878 S.W.2d 530 (Tenn. 1994); State v. Blanton, 926 S.W.2d 953 (Tenn. Crim. App. 1996). As we have previously noted in this opinion, the uncontradicted evidence clearly shows the defendant had unlawful sexual contact with a ten-year-old victim, thereby committing aggravated sexual battery. Thus, the trial court did not err in failing to instruct the jury on lesser offenses.

For the reasons set forth in this opinion, the judgment of the trial court is affirmed.


_____
JAMES C. BEASLEY, SR., SPECIAL JUDGE



CONCUR:


_____
JOHN H. PEAY, JUDGE


_____
JOE G. RILEY, JUDGE